UNITED STATES of America, Plaintiff,

v.

Manuel Antonio NORIEGA, Defendant.

No. 88–79–CR.

United States District Court,
S.D. Florida.

June 14, 1990.

**1542**

Michael P. Sullivan, Myles H. Malman, Karen E. Rochlin, Asst. U.S. Attys., for plaintiff.

Steven Kollin, Frank A. Rubino, Coconut Grove, Fla., for defendant.

### ORDER SETTING CAUSE FOR HEARING ON DEFENDANT'S FROZEN ASSETS

HOEVELER, District Judge.

THIS CAUSE is before the Court on the several motions of counsel for Defendant Manuel Noriega relating to the freezing of his assets either by or at the request of the United States government.

The precise issue before the Court is whether the government may deprive a criminal defendant of his only assets available for attorneys' fees without any showing that the assets are connected to illegal activity, and without affording the defendant any opportunity to contest the seizure. Unless the constitutional rights to due process and counsel of choice are to be stripped of all meaningful content, the Court must necessarily answer in the negative. Accordingly, it is the Order of the Court that a hearing be held at which the government must demonstrate the likelihood that the assets in question are the product of Defendant's alleged illegal activities.

### I. FACTS

Defendant Noriega, the former de facto ruler of Panama, is charged with various narcotics-related offenses. Noriega was apprehended in Panama and brought to the United States as a result of a military invasion of Panama undertaken by United States military forces under orders from President Bush. During the course of the invasion, American troops seized $5.8 million from Noriega's home in Panama City and promptly turned over the sum to the new Panamanian government installed immediately prior to Noriega's removal from power. In addition to taking the money found in Defendant's home, twenty-seven bank accounts containing approximately $20 million were frozen by various foreign governments at the request of the United States government. Additionally, defense counsel state that Noriega's home, automobiles, and all of his personal possessions were seized by the governments of Panama and the United States, leaving him with "literally the clothes on his back and at present in possession of no other property."[1]

Contending that Noriega is unable to pay attorneys' fees as a result of the government's freezing of his assets, Noriega's lawyers move to withdraw as defense counsel. Noriega, through his counsel, also filed a motion to compel the government to identify frozen assets which the government contends belong to or were controlled by Noriega, a motion for return of property pursuant to Fed.R.Crim.P. 41(e), and a motion to dismiss the indictment as a consequence of governmental action denying Defendant due process of law and effective assistance of counsel.

### II. DISCUSSION

The Fifth Amendment provides that a person may not be deprived of life, liberty, or property without due process of law. Consistent with that fundamental guarantee, due process traditionally requires that a defendant not be deprived of his property without adequate notice and opportunity for a hearing. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The precise procedural protections due a defendant are flexible and depend on the particular circumstances and interests involved. Thus, in determining what process

1. *Motion to Withdraw as Counsel,* p. 6 n. 4    (April 30, 1990).

must be afforded Defendant, the Court must consider (1) the private interest that will be affected by the government's action; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any of additional procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional substitute requirement would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Wofford v. Wainwright,* 748 F.2d 1505, 1507 (11th Cir. 1984).

▉ There can be no question that the interest affected here is substantial and compelling. At stake is the defendant's Sixth Amendment right to his counsel of choice. The right to be represented through counsel of one's own choosing has long been regarded as an incident of the fundamental right to be heard through counsel. *See Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932). This right is, of course, not absolute. For example, a defendant's ability to secure counsel of choice is largely a function of his financial resources; thus, the right to counsel of choice does not entitle a non-indigent defendant to the services of an expensive lawyer he is otherwise unable to afford. But where, as here, the criminal defendant seeks to retain legal representation with his own assets, his choice of counsel clearly warrants constitutional protection. "An accused who is financially able to retain counsel must not be deprived of the opportunity to do so." *United States v. Burton,* 584 F.2d 485, 489 (D.C.Cir.1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979). The undeniable reality is that "the quality of a criminal defendant's representation may frequently turn on his ability to retain the best counsel money can buy." *Morris v. Slappy,* 461 U.S. 1, 23, 103 S.Ct. 1610, 1622, 75 L.Ed.2d 610 (1983) (Brennan, J., concurring in result).

In addition to the nature of the interest affected, the Court must consider the probable risk of erroneous deprivation of this interest through the procedures used. In *United States v. Moya–Gomez,* 860 F.2d 706 (7th Cir.1988), the Seventh Circuit held that due process was violated by use of a criminal forfeiture statute which denied the defendant any opportunity to contest the government's pre-trial restraint of his assets, thus depriving the defendant of assets needed to retain his counsel of choice. *Accord United States v. Harvey,* 814 F.2d 905, 928 (4th Cir.1987), *rev'd in part sub nom. In re Caplin & Drysdale,* 837 F.2d 637 (4th Cir.1988) (en banc), *aff'd, Caplin & Drysdale, Chartered v. United States,* — U.S. —, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); *United States v. Unit No. 7 and Unit No. 8,* 890 F.2d 82, 85–86 (8th Cir.1989) (Arnold, Circuit Judge, dissenting); *United States v. Crozier,* 777 F.2d 1376 (9th Cir.1985). As the court noted, the risk of an erroneous deprivation is especially pronounced where attorneys' fees are at issue. In most cases, the freeze imposed on a defendant's assets may be regarded as temporary since the defendant's use of the assets is merely postponed pending the outcome of the trial. With regard to attorneys' fees, however, the freeze constitutes a permanent deprivation since "[t]he defendant needs the attorney *now* if the attorney is to do him any good." 860 F.2d at 726 (emphasis in original).

The procedure—or lack of procedure—in this case is even more defective than that at issue in *Moya–Gomez* and cases cited by the government. Here, the government has not only placed Defendant's assets out of his reach without affording him any meaningful opportunity to be heard, but it has indeed done so without any showing that the assets are tainted by illegal activity. It is well settled that the government cannot seize a person's assets without probable cause. *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency,* 461 U.S. 555, 562 n. 12, 103 S.Ct. 2005, 2011 n. 12, 76 L.Ed.2d 143 (1983). In the context of forfeiture, probable cause must exist to believe the assets in question are substantially connected to the underlying criminal activity. Under the applicable civil and criminal forfeiture statutes, such cause may be found upon a grand jury indictment setting forth the probable cause or an ex

parte finding of forfeitability by a magistrate or other judicial officer. *See* 21 U.S.C. § 853(e) (criminal forfeiture), and 21 U.S.C. § 881(b) (civil forfeiture). *See also United States v. Certain Real Estate Property*, 612 F.Supp. 1492 (S.D.Fla.1985) (Due process forbids the seizure of property pursuant to 21 U.S.C. § 881(b) without prior judicial review, absent exigent circumstances). In this case, no such finding was made. Rather, the government simply asked various foreign governments to freeze Defendant's assets which the government believes are the product of alleged narcotics activities. What the government believes as to the nature of Defendant's assets is, however, nothing more than an accusation at this point, and does not alone constitute the probable cause necessary to deprive a defendant of his assets. That determination ultimately lies with the Court. As stated above, there has been no hearing offered by the government to provide Defendant Noriega the opportunity to contest its action, nor any allegatorial framework to which Noriega can respond. In view of the government's failure to establish probable cause for the freezing of Defendant's assets, it seems evident that the lack of an adversarial hearing at which the government's suggestion of tainted funds can be placed in question would work a double deprivation on Defendant.

■ Whether this deprivation is justified must be determined in light of the government's interest in the procedures utilized. On the present record, the government has not articulated any interest justifying its actions in this case. To ascertain the possible burden placed upon the government by the requirement of more stringent procedures than those used here, the Court looks to the criminal forfeiture provisions of 21 U.S.C. § 853(e) for reference. This statute amends the criminal forfeiture provisions of both the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and the Continuing Criminal Enterprise (CCE) statutes, 18 U.S.C. § 848. Section 853(e) allows an ex parte restraining order to be placed upon assets potentially subject to forfeiture. The purpose of the ex parte order is to prevent the government from having to litigate the merits of its underlying case prior to trial. Before the statute was enacted, the government was often required to prove the merits of the criminal case in order to support the restraining order. By allowing such orders to be issued ex parte, the statute minimizes the potential of damaging pre-trial disclosure of the government's case and trial strategy. While this interest is strong, the Court finds it insufficient to overcome a criminal defendant's interest in using his nonforfeitable assets to mount the best defense possible. More important, the ex parte restraining order permitted under § 853 may be issued only upon a judicial finding of probable forfeitability. That requirement has not been met here. The Court fails to see what possible government interest justifies its freezing of Defendant's assets without setting forth any basis for its allegations that the assets are tainted by illegal activity. The danger that an innocent person may be convicted because of the unfair deprivation of assets that would have been used to retain his counsel of choice is simply too great to permit a freeze to go unchallenged.

The government's assertion that Noriega may not insist on representation he cannot afford is a type of circular reasoning which begs the important question in issue. No one doubts that an indigent defendant has no constitutional right to counsel of his choice. At most, the indigent defendent is entitled to *some* legal repesentation in the form of court-appointed counsel. But by the same token, a defendant cannot be forced into indigency without due process and then be told that he has no right to representation he cannot afford. Noriega is not asking for expensive counsel beyond his financial means; rather, he simply desires to pay his attorneys with assets which the government may not be able to prove are the product of criminal activity. Elementary concepts of fairness suggest that no one, government or otherwise, should take and hold another's property which it has no legal right to hold. The government's position thus evidences a misapprehension of Defendant's constitutional rights. Were such a narrow view of a

criminal defendant's rights to prevail, the constitutional guarantees of due process and right to counsel would be rendered mere empty words. Certainly the Government has a strong interest in combatting the drug epidemic which plagues this country, but this effort must never be at the expense of an accused's constitutional rights. As Judge Gonzalez of this District has aptly stated: "Neither the Congress nor the people intended that the Bill of Rights be a fatality in the war on drugs." *United States v. Certain Real Estate Property*, 612 F.Supp. at 1497–98.

The cases cited by the government are not to the contrary. In *Caplin & Drysdale, Chartered v. United States*, — U.S. ——, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), the Supreme Court held that assets subject to forfeiture cannot be used to pay attorneys' fees. The Court did not, however, hold that assets not subject to forfeiture cannot be used to secure counsel of choice. 109 S.Ct. at 2652. Rather, the Court simply rejected the "notion of a constitutional right to use the proceeds of crime to finance an expensive defense." 109 S.Ct. at 2655. Since the government has made no showing that the assets in question are the proceeds of crime, *Caplin & Drysdale* does not apply. Indeed, the companion case of *United States v. Monsanto*, — U.S. ——, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), explicitly left open the question of whether due process requires that a hearing be held before a defendant is unilaterally deprived of his assets. 109 S.Ct. at 2666 n. 10. For the reasons stated above, the Court finds that such a hearing must be afforded Defendant where the restrained assets are his only means of securing counsel of choice.[2]

■ The government claims that the requirements of notice and a hearing do not apply to its actions since the assets were not frozen pursuant to any forfeiture statute. The method by which the government proceeded to place the assets out of Defendant's reach occurred pursuant to letters rogatory and less formal requests issued to foreign governments. The fact that the government utilized means independent of the forfeiture statutes to effect the freezing of defendant's assets does not, however, protect its conduct. Regardless of whether the forfeiture statutes are invoked, the government is always bound by the minimum constitutional requirements imposed under the Fifth Amendment. The power of the Executive to deal with foreign governments is unquestionably great, but it does not extend so far as to impinge on a criminal defendant's right to due process.

Equally unpersuasive is the government's contention that it is powerless to unfreeze the assets contained in the foreign bank accounts. As the Government concedes, these accounts were frozen by various foreign governments at the specific request of the United States government. That the government was able to persuade foreign authorities to freeze the assets in the first place belies its suggestion that it has no influence over the accounts in question. While the Court's jurisdiction over these accounts is uncertain, what is clear is that this Court exercises jurisdiction over the parties. The government cannot be permitted to rest on its claim that "what is done is done," at least where efforts to unfreeze the assets have not been undertaken. This case, as with any other criminal case, must be tried on the strength of the government's evidence against the accused. In this pursuit of truth it is incumbent upon the Court to protect, to the extent legally permissible, the Defendant's selection of counsel.

■ In short, the Court finds that where a criminal defendant's only assets available for payment of attorneys' fees have been

---

2. In so holding, the Court does not mean to suggest that due process requires a hearing before the government is permitted to freeze or otherwise restrain assets believed to be forfeitable. Such a requirement could well defeat the government's substantial interest in preventing a defendant from removing or transferring his assets in order to escape forfeiture. *See Calero-* *Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 676–80, 94 S.Ct. 2080, 2088–90, 40 L.Ed.2d 452 (1974) (*In rem* seizure of a yacht carrying illegal narcotics is permissible provided a postseizure hearing is conducted). The Court merely finds that due process mandates a *post*-restraint, pre-trial hearing where Sixth Amendment concerns are implicated.

**1546**

placed out of reach by government action, due process mandates that the government be required to demonstrate the likelihood that the restrained assets are connected to illegal activity. This finding must necessarily be established in the context of a limited adversarial hearing which affords the defendant adequate opportunity to test the government's case.

In light of the above determination, the Court need not reach the question of whether the Criminal Justice Act provides for attorneys' fees in excess of the statutory maximum hourly rate. The Criminal Act applies to indigent defendants. Until the government sufficiently demonstrates that the assets in question are related to Defendant's alleged illegal activities, Noriega cannot be considered indigent.

Accordingly, it is the Order of the Court that an evidentiary hearing be held at *4 p.m. on Wednesday, June 20, 1990.* The government will be required to identify all properties and assets seized or frozen which it believes belong to or were controlled by Noriega, including the extent of the assets, their location, and the identity of the party in control of the assets and properties. Among these assets which must be identified are those over which the government presently has sole and exclusive control and those which have been frozen by other parties or governments at the request or suggestion of the United States government. The government must further specify the nature of the actions taken to effect the freezing of Defendant's assets and the authority, if any, which supports those actions. Should the government have any information regarding the amounts of money or property paid or given Defendant by others, including other governments or foreign officials within the last five years, such information must be provided to the Court. Finally, the government will be required to state whether any efforts were made to differentiate between assets and properties allegedly tainted by illegal drug activities and those acquired by other means. To the extent the government is willing to concede its inability to isolate tainted from untainted funds, the Court will not require that it offer any

evidence on this subject and will order that the property be cleared of restraint.

In accordance with the adversarial nature of the hearing which due process requires under these circumstances, Defendant Noriega will be permitted to testify as to all aspects of his assets which his counsel have determined will aid the Court in ensuring that Defendant is not deprived of his property without due process of law. If the government is unwilling to proceed with such a hearing, then it must be prepared to undertake efforts to unfreeze assets which, in the Court's view and pursuant to its supervisory authority, are necessary to ensure payment of reasonable attorneys' fees.

For the reasons stated above, it is hereby,

ORDERED AND ADJUDGED that Defendant's motion to compel the government to identify all assets frozen which the government believes belong to or were controlled by Defendant is hereby GRANTED. The Court reserves ruling on the remaining motions pending completion of the above-ordered hearing.

DONE AND ORDERED.