637 A.2d 736

**COMMONWEALTH of Pennsylvania**

**v.**

**$9,847.00 U.S. CURRENCY, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 8, 1993.

Decided Feb. 1, 1994.

Reargument Denied March 22, 1994.

Arthur J. Dougherty and Allan S. Ewing, for appellant.

Syndi L. Guido, Deputy Atty. Gen., Appeals and Legal Services Section, for appellee.

Before SMITH, and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

Arthur J. Dougherty appeals an order of the Court of Common Pleas of Franklin County which denied his request for court-appointed counsel. We reverse.

In November 1989, troopers from the Pennsylvania State Police executed a search warrant at Dougherty's residence and seized $9,847.00 in United States currency, approximately two ounces of marijuana, various items of drug paraphernalia, including a small scale which contained cocaine residue and records of purported drug transactions. Dougherty was subsequently arrested and charged with various drug offenses; he entered a plea of guilty pursuant to a plea agreement and was sentenced to a prison term which he is presently serving at the State Correctional Institute at Huntingdon.[1]

In 1992, the Commonwealth filed a petition for civil forfeiture and condemnation, seeking a court order that the $9,847.00 in U.S. currency be forfeited to the Commonwealth. The petition, which was filed pursuant to the Controlled Substances Forfeiture Act,[2] alleged that the money was the proceeds of illegal drug transactions and subject to forfeiture under 42 Pa.C.S. § 6801(a)(6)(i)(A) & (B).[3] Dougherty filed a statement of indigency, a claim that the Commonwealth does not challenge, and requested that he be provided with court-appointed counsel. The trial court appointed Timothy S. Gordon, Esquire, to represent Dougherty. The Court later rescinded this appointment due to a conflict of interest and appointed Richard L. Bushman, Esquire. Because Bushman was representing Dougherty's wife in a divorce proceeding

1. The record does not indicate the precise charges to which Dougherty pled guilty. Furthermore, Dougherty claims that he was sentenced to a prison term of four and one-half to fifteen years while the Commonwealth claims that Dougherty was sentenced to a prison term of four to ten years. Our disposition does not, however, require the resolution of these matters.

2. 42 Pa.C.S. §§ 6801-02.

3. Those sections provide:
   (a) **Forfeitures generally.**—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:
   . . . .
   (6)(i) All of the following:
   (A) Money ... furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.
   (B) Money ... used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act.

against Dougherty, the court rescinded Bushman's appointment and appointed Philip S. Consentino, Esquire. In a petition to vacate the appointment, Consentino alleged that because the forfeiture proceeding was civil, as opposed to criminal, and because Dougherty's liberty interest was not at stake, Dougherty was not entitled to court-appointed counsel. Although the record contains no indication that the court vacated Consentino's appointment, on April 8, 1993, the trial court entered an order denying Dougherty's request for the appointment of counsel. Dougherty filed a timely appeal from that denial to this court.

Dougherty presents a question of first impression in this Commonwealth; i.e., where the Commonwealth seeks forfeiture of property under 42 Pa.C.S. § 6801–02, is an indigent defendant entitled to free representation by court-appointed counsel?

Initially, we note that the order denying Dougherty's request for the appointment of counsel is interlocutory and not immediately appealable. The United States Supreme Court has set forth the primary reasons that, as a general rule, appeals may be taken only from final orders:

> As the Court noted in *Firestone [Tire and Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) ], the final judgment rule promotes efficient judicial administration while at the same time emphasizing the deference appellate courts owe to the district judge's decisions on the many questions of law and fact that arise before judgment.... Immediate review of every trial court ruling, while permitting more prompt correction of erroneous decisions, *would impose unreasonable disruption, delay, and expense. It would also undermine the ability of district judges to supervise litigation.*

*Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 430, 105 S.Ct. 2757, 2760, 86 L.Ed.2d 340 (1985) (emphasis added). Without denigrating the importance of either of these considerations, we must also note the following statement of the Pennsylvania Supreme Court:

Despite the contention that allowing appeals from these orders [dismissing class aspects of a lawsuit] might, perhaps, increase the number of cases for appellate review, we believe, as does Professor [Charles Alan] Wright, that '[i]f better justice can be obtained by broadening the scope of appellate review, then even congestion delay and expense are not too high a price to pay.' We do not perceive our appellate responsibilities as a variable function of our caseload. Appellate review at this juncture is a judicial duty which we may not abdicate by simply saying that we do so to avoid 'congestion, delay and expense.'

*Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 232, 348 A.2d 734, 737–38 (1975) (footnotes omitted).

Conceding that the order is technically interlocutory, Dougherty asserts that it is immediately appealable because the order is "collateral" within the meaning of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We agree.

■ The "collateral order" doctrine, adopted in this Commonwealth in *Bell*, and *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978), provides that certain orders, while technically interlocutory, are immediately appealable.[4] As the Supreme Court stated in *Pugar*:

In Cohen, the Supreme Court of the United States carved out an exception to the final judgment rule for situations where postponement of appeal until after final judgment might result in irreparable loss of the right asserted. Under Cohen, an order is considered final and appealable if (1) it is separable from and collateral to the main cause of

---

4. The Pennsylvania Supreme Court has recently promulgated Pa.R.A.P. 313, which provides, in pertinent part, "An appeal may be taken as of right from a collateral order of an administrative agency or a lower court." Pa.R.A.P. 313(a). The note to the rule specifically states that it is "effective July 6, 1992 to govern only action ... *commenced in a court ... after July 6, 1992*." (Emphasis added.) The present forfeiture action was commenced by the Commonwealth's petition filed May 21, 1992. Therefore, Rule 313 itself does not apply; nonetheless, the rule is merely a codification of the doctrine which has been applicable in this Commonwealth since the Supreme Court's decision in *Bell* in 1975.

action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost.

*Pugar,* 483 Pa. at 73, 394 A.2d at 545.[5]

We believe that two cases are of paramount importance and must be considered in analyzing the question of whether the order denying the appointment of counsel meets the *Cohen* standard and so is immediately appealable. In *Commonwealth v. Cassidy,* 390 Pa.Superior Ct. 359, 568 A.2d 693 (1989), the Commonwealth filed a motion to disqualify an attorney retained by a *criminal* defendant. The trial court granted the motion and the defendant sought immediate review. The Superior Court first concluded that the two initial prongs of the *Cohen* standard; i.e., that the order is separate from and collateral to the main cause of action and that the right involved was too important to be denied immediate review, were easily met. *The same is true in the present case.* The question of whether counsel should be appointed is completely different from the question of whether Dougherty's property should be forfeited. The importance of the right to counsel is self evident.

In *Cassidy,* the court then focused on the final factor requiring that the claimed fundamental right would be irreparably lost if review was postponed until after the criminal trial. While recognizing that in *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), the United States Supreme Court held that review was not irreparably lost by requiring a criminal defendant to delay a challenge to a disqualification order until after conviction and sentencing, the Superior Court declined to follow *Flanagan* and based its

5. In Pennsylvania, a "final" order is one which ends the litigation or disposes of the entire case. *Commonwealth v. Wise,* 328 Pa.Superior Ct. 491, 477 A.2d 552 (1984). Cases holding that an interlocutory order is immediately appealable within the collateral order doctrine frequently state the order is "collateral" because it has aspects of *finality.* Despite the use of this term, the collateral order doctrine is applied only to interlocutory, non-appealable orders; otherwise, there would be no need for the doctrine.

determination on article 1, § 9 of the Pennsylvania Constitution rather than on the federal Constitution.[6] The court went on to state:

> The selection of an attorney is one of the most important decisions, if not the most important decision, made by a defendant in shaping a defense and in attempting to secure his or her release.... Thus, in our judgment a criminal defendant's right to select counsel of his or her choice *cannot be effectively protected if we delay review of orders denying that right until final judgment.* By forcing a defendant to proceed to trial without counsel of choice, we are forcing that defendant to reveal his or her defense, as well as the testimony of witnesses, to the Commonwealth. Consequently, *even if the defendant is awarded a new trial due to improper disqualification of his or her attorney, the defendant has already been permanently prejudiced.*

*Cassidy,* 390 Pa.Superior Ct. at 365–66, 568 A.2d at 696 (emphasis added) (citations and footnote omitted). The court concluded that all three prongs of the *Cohen* test were met and that immediate review of the disqualification question was required.

In *Duttry v. Talkish,* 394 Pa.Superior Ct. 382, 576 A.2d 53 (1990), the plaintiff, a prisoner, filed an action seeking partial custody of and visitation rights to his minor child. Because he was indigent, the plaintiff asked the common pleas court to appoint counsel to represent him in the action. The trial court denied the request and the plaintiff filed an immediate appeal from that denial. However, the Superior Court concluded that an immediate appeal was not required under the collateral order doctrine. After reaching this conclusion, the court further stated:

> Nor are we confronted with a scenario in which an indigent is being faced with the *termination* of his parental rights. *If such were the case, our approach to the matter, as well as to its resolution, might well be different.* See, e.g., *State v.*

---

**6.** A state court interpreting its own constitution may hold that provisions of the state constitution provide *greater* protections than similar provisions in the United States Constitution.

*Jamison,* 251 Or. 114, 444 P.2d 15, 17 (1968) (Indigent parent at termination proceeding must be supplied with counsel at public expense); *In re Rodriguez,* 34 Cal.App.3d 510, 110 Cal.Rptr. 56 (1973) (Statute and Due Process required appointment of counsel to indigent parent where termination of parental rights involved); *Danforth v. State Dept. of Health & Welfare,* 303 A.2d 794 (Me.1973) (Statute gives a right to indigent parents to counsel in termination cases); *In re Adoption of R.I.,* 455 Pa. 29, 312 A.2d 601 (1973) (Indigent parent was entitled to the appointment of counsel in an involuntary termination of parental rights case, or, at the very least, to be told of one's right to free counsel).

We do not find the denial of the appellant's request for the appointment of counsel to aid him in his effort to secure partial custody/visitation rights *has such cryptic connotations, as in termination, paternity, dependency or involuntary commitment hearings, to authorize the immediacy of his denial-order for appellate review.* Compare *In Interest of Michael Y.,* 365 Pa.Super. 488, 530 A.2d 115 (1987) (A party at a dependency hearing has right to be apprised of right to counsel, and free counsel if indigent); *In Interest of S.N.W.,* 362 Pa.Super. 295, 524 A.2d 514 (1987) (Juvenile Act provides for the appointment of counsel for indigent parent in a dependency hearing); *In re Hutchinson,* 500 Pa. 152, 454 A.2d 1008 (1982) (Right to *effective* counsel in involuntary commitment proceedings under § 304 of the Mental Health Procedures Act); *Corra v. Coll,* 305 Pa.Super. 179, 451 A.2d 480 (1982) (Indigent defendants in civil paternity actions have a constitutional right to appointed counsel).

*Duttry,* 394 Pa.Superior Ct. at 392–93, 576 A.2d at 58 (emphasis added) (footnotes omitted).

*Cassidy* makes clear that in a criminal case, the right to choice of counsel, protected by article 1, § 9 of the Pennsylvania Constitution, is such a *fundamental* right that even a seemingly temporary deprivation thereof cannot be cured by a subsequent reversal on appeal; the harm suffered constitutes a permanent and irreparable loss. In *Duttry,* the court

recognized that if an order denying the choice of counsel is immediately appealable, the more basic right to counsel itself should be accorded the same treatment. In *Duttry,* 394 Pa.Superior Ct. at 388, 576 A.2d at 56, the Superior Court quoted with approval the following pronouncement of the Third Circuit in *Smith–Bey v. Petsock,* 741 F.2d 22, 25 (3rd Cir.1984). "[I]t is quite clear to us that an order disqualifying a party's choice of counsel is not easily distinguishable from an order denying counsel." [7] It is self evident that the *right to counsel itself,* to a party who cannot afford counsel, requires greater protection than the right to one's *choice* of counsel. Thus, if the right to *choice* of counsel in a criminal proceeding can be adequately protected only by an immediate appeal, the same must be true for *the right to counsel itself* for an indigent defendant where that defendant's constitutional rights under the Eighth and Fourteenth Amendments may be affected.[8]

Because the court in *Duttry* held that an order denying the right of free counsel for an indigent party in a *civil* case involving child custody and visitation rights was not immediately appealable as a collateral order, it would appear to contradict our position. However, a review of the entire opinion in *Duttry* actually offers further support for our position. The court based its rationale for this holding upon the fact that any deprivation which might result from a change in custody and visitation rights was not permanent and irreparable. As the court noted, "Custody (i.e., visitation) is an

7. In *Smith–Bey,* the court determined that an order denying the appointment of counsel in a civil rights action by a prisoner against prison authorities was not immediately appealable as a collateral order. In so holding, the court discussed *Ray v. Robinson,* 640 F.2d 474 (3rd Cir.1981), where the court allowed immediate review of an order denying counsel to a similar plaintiff; the court, however, stated that *Ray* had been overruled by *Flanagan.* The court also noted that the right to counsel under the Sixth Amendment was not implicated in *Smith–Bey* because that right applied only to criminal proceedings. Our review of *Smith–Bey* shows that the prisoner-plaintiff relied entirely on *Ray* and did not advance any other constitutional rights requiring the appointment of counsel.

8. We shall shortly discuss the applicability of the Eighth and Fourteenth Amendments to these proceedings.

ongoing process which may be modified 'at any time the best interest of the child requires such.' *Karis v. Karis*, 518 Pa. 601, 607–08, 544 A.2d 1328, 1331 (1988)...." *Duttry*, 394 Pa.Superior Ct. at 392 n. 8, 576 A.2d at 58 n. 8. It is noteworthy, however, that our colleagues on the Superior Court, in what is admittedly dicta, stated that the result may very well have been different if the right to appointed counsel had been recognized in certain types of *civil* cases by the courts [9] or the legislature [10] of this Commonwealth. Referring to the Superior Court's dicta, the Commonwealth in its brief acknowledges that "[i]mplicit in the Superior Court's comment is the idea that if a litigant has a constitutional right to counsel in a particular type of case, a pretrial order denying that right is immediately appealable." We find this idea both compelling and correct.[11] Thus, if Dougherty's right to appointed counsel

**9.** The Pennsylvania Supreme Court has recognized that due process requires that an indigent parent whose parental rights are subject to involuntary termination be informed that he or she is entitled to free counsel. *In re Adoption of R.I.*, 455 Pa. 29, 312 A.2d 601 (1973). Furthermore, the Superior Court has held that a defendant in a paternity action is entitled to appointed counsel under the Due Process Clause. *Corra v. Coll*, 305 Pa.Superior Ct. 179, 451 A.2d 480 (1982). In *Corra*, the court relied heavily on the fact that a defendant in paternity proceedings *who was determined to be the child's father* could be subjected to the *loss of liberty* under 18 Pa.C.S. § 4324 for failure to willfully comply with a support order if the father is financially able to comply.

**10.** Under section 304(c)(3) of the Mental Health Procedures Act, Act of July 9, 1976, P.L. 817, *as amended*, 50 P.S. § 7304(c)(3) (Supp.1993–94), the legislature has required that the subject of involuntary commitment proceedings is entitled to court-appointed counsel. Similarly, under 42 Pa.C.S. § 6337, a part of the Juvenile Act, a party subject to proceedings under the Juvenile Act is entitled to court-appointed counsel if indigent.

**11.** We do not believe a different result is compelled by our decision in *Gamble v. Pennsylvania Turnpike Commission*, 135 Pa.Commonwealth Ct. 84, 578 A.2d 1366 (1990). In *Gamble*, the plaintiff in a wrongful death action against the Turnpike Commission asked the trial court to disqualify an attorney representing the Commission because of a conflict of interest. The court granted the disqualification motion. The Turnpike Commission's liability insurer, after being permitted to intervene, took an immediate appeal of the disqualification order to this court. We quashed the appeal, concluding that the disqualification order was not collateral within the meaning of *Cohen*. *Gamble* is

in a civil forfeiture case is protected by the United States Constitution or the Pennsylvania Constitution, the present order which denies him that right is immediately appealable as a collateral order.[12]

Dougherty argues that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the appointment of counsel in this proceeding where the Commonwealth is seeking the forfeiture of almost $10,-000.00. The Fourteenth Amendment provides in part that "[n]o state shall ... deprive any person of life, liberty, *or property,* without due process of law." (Emphasis added.)[13] These protections are applicable to individuals, and thus apply to private, personal rights. As the Superior Court has stated, "Due Process is a concept incapable of exact definition. Rather it is a flexible notion which calls for such procedural safeguards as a particular situation demands to ensure fundamental fairness to a potentially aggrieved litigant." *Corra,* 305 Pa.Superior Ct. at 182, 451 A.2d at 482 (1982).[14]

■ One court has recently set forth a history of the Due Process Clause as it relates to the question of whether an indigent litigant is entitled to free, appointed counsel.

distinguishable, however, because there was no allegation that *the government's actions were affecting the fundamental rights of a litigant.*

12. We recognize that this analysis could be subjected to the legitimate criticism that it involves "bootstrapping". Nonetheless, the Superior Court's holdings show that in this Commonwealth, the questions concerning (1) the existence of a right and (2) the necessity of allowing an immediate appeal to protect that right are inextricably intertwined. As Dougherty is the first litigant to assert the right to appointed counsel in civil forfeiture proceedings, we believe it would be a grave injustice to deny him that right because it had not been previously recognized in Pennsylvania.

13. All provisions of the Bill of Rights, which protect individuals against certain actions of the government, are applicable to the states because of the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

14. The United States Supreme Court has recently stated, "Unless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *United States v. James Daniel Good Real Property,* —— U.S. ——, ——, 114 S.Ct. 492, 505, 126 L.Ed.2d 490 (1993) (footnote omitted).

When the action of a court clearly implicates the substantial interests of a party, the Due Process Clause of the Constitution may require a court to appoint an attorney to insure the adequate representation of that party's interests. *Lassiter v. Department of Social Services,* 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981). Historically, due process required the appointment of counsel only in cases threatening the physical liberty of criminal defendants. *Lassiter,* 452 U.S. at 25, 101 S.Ct. at 2158. In *Lassiter,* the Supreme Court found this historical interpretation *merely "to be a presumption* that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Lassiter,* 452 U.S. at 26–27, 101 S.Ct. at 2159. *If a citizen is not automatically entitled to representation simply because of the character of the proceeding or the nature of the possible deprivation, due process may still require the appointment of counsel in a particular case. Id.* The *Lassiter* Court held that the presumption against appointed representation must be balanced against the tripartite due process equation enunciated in *Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Lassiter,* 452 U.S. at 26–27, 101 S.Ct. at 2159. In *Eldridge,* the Supreme Court listed three factors a court must evaluate when determining whether Due Process requires an additional procedural safeguard (such as the appointment of counsel), in an official action by the government. *Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903. Those factors are: 1) the private interest that will be affected by the action of the government; 2) the risk of erroneous deprivation of that interest and the probable value of an additional procedural safeguard; and 3) the government's interest involved, including the burdens entailed by the additional procedural safeguard. *Id.* This is a case-by-case determination to be made by the district court. *Lassiter,* 452 U.S. at 31, 101 S.Ct. at 2161.

*United States v. 1604 Oceola,* 803 F.Supp. 1194, 1196–97 (N.D.Tex.1992) (emphasis added).

█ In the present case, *Dougherty's liberty interest cannot be affected by the eventual outcome of these proceedings;* thus, the presumption under *Lassiter* is that the appointment of counsel is not necessary. Our research has revealed only one case from another jurisdiction which deals with the precise question posed here, i.e., does application of the tripartite balancing test of *Eldridge* warrant a conclusion that overcomes the presumption against Dougherty's right to counsel, thereby requiring that counsel be appointed in this civil forfeiture case? [15] In *1604 Oceola,* the owners of a house pled guilty to narcotics charges based upon transactions conducted in the house. Following the convictions, the government sought forfeiture of the house. The owners asked that counsel be appointed to represent them in the forfeiture proceedings. The court in *1604 Oceola* concluded that the appointment of counsel was not required, stating:

> In the case at bar, the private interest affected is the Garcia's (sic) possession of their family home. They have been paying a mortgage upon the house for nearly twenty-

15. A vast majority of cases dealing with forfeiture and the right to counsel involve the question of whether the seizure of assets which leave a criminal defendant without funds to pay an attorney violates that defendant's right to counsel of choice. *See, e.g., United States v. Moya–Gomez,* 860 F.2d 706, 719–21 (7th Cir.1988). In the present case, *the Commonwealth's seizure of Dougherty's money prior to these forfeiture proceedings has rendered Dougherty indigent and unable to pay for counsel.* In *United States v. Noriega,* 746 F.Supp. 1541 (S.D.Fla. 1990), the court held that the government was required to demonstrate the likelihood that seized assets were connected to illegal activity where the defendant wished to use those assets to pay a *criminal defense lawyer.* As the court stated:

> No one doubts that an indigent defendant has no constitutional right to counsel of his choice. At most, the indigent defendant is entitled to *some* legal representation in the form of court-appointed counsel. But by the same token, a defendant cannot be forced into indigency without due process and then be told he has no right to representation he cannot afford. Noriega is not asking for expensive counsel beyond his means; rather, he simply desires to pay his attorneys with assets the government may not be able to prove are the product of criminal activity. Elementary concepts of fairness suggest that no one, government or otherwise, should take and hold another's property which it has no legal right to hold.

*Id.* at 1544 (emphasis in original).

five years and currently owe only about $2,300. Clearly, this interest is substantial and important.

The government interests involved are less compelling. The forfeiture seems to be primarily sought *to further the punitive and exemplary interests of the government.* There is no evidence that the home is a present danger to society, that it is enabling the continued trafficking of narcotics, or that it will pose a danger to society in the future or enable the Garcias to do so. *The government is seeking to impose an additional penalty upon the Garcias,* (who are already incarcerated), and to set an example of the costs involved in dealing drugs. While the government's interest in deterrence can be important, forfeiture of the Garcia's (sic) home would not significantly further those interests beyond the penalties already imposed. Any remedial interest the government has in seeking forfeiture to reimburse itself for the investigation and prosecution of Garcias is equalled by Garcias (sic) monetary interest in maintaining their home. The government's interests in seeking forfeiture are important, but not compelling. Further, there is no showing that the government's interests will be substantially affected by the appointment of counsel for the Garcia (sic).

The additional burdens imposed upon the government by appointment of counsel in this case would not be overwhelming. The mechanism to appoint counsel already exists, and though a question might arise of where funds for such an appointment might be found, no substantial procedural or administrative burdens would be created by a decision in the claimant's favor. Perhaps the most substantial imposition upon the government would be requiring the Plaintiff to oppose an attorney in a complicated and abstruse field where the Plaintiff normally expects to meet only pro-se litigants struggling through the claimant process. This imposition is not sufficient to deny the appointment of counsel.

The remaining *Eldridge* factor requires an examination of the *likelihood of an erroneous deprivation* and the probable

value of an additional procedural safeguard.... It is quite likely that in most, if not all forfeiture cases, the appointment of counsel would substantially aid a claimant in negotiating the arcane forfeiture procedures. It is also quite likely that in forfeiture cases where the claimant has a chance of success, the risk of an erroneous deprivation of property rights is substantially higher if the claimant must proceed pro-se.

Unfortunately for the Garcias, *there is little chance a deprivation of their property through this particular proceeding would, in fact, be erroneous.* Based upon evidence submitted by the government, the Court previously found sufficient probable cause existed to issue seizure warrants under Fed.Rule Crim.Pro. 41(c). The Garcias *pled guilty to narcotics charges stemming from transactions involving their home.* Examining the affidavits of the plaintiffs, submitted for the purposes of the seizure warrant, and the guilty pleas of the claimants, there is ample evidence in the record to support a finding of forfeiture. Without deciding whether this evidence would eventually result in a forfeiture, the Court merely decides that an erroneous deprivation of property is unlikely in this case.

*1604 Oceola* at 1197–98 (emphasis added) (citation and footnote omitted). The court thus concluded that the appointment of counsel was not required, based entirely upon the substantial likelihood that the forfeiture petition would be granted because the house was used to facilitate the illegal drug transactions.

We agree with much of the analysis of the court in *1604 Oceola* and believe it may have been correct *at the time it was decided.* However, we are convinced that case would be decided differently today. Approximately ten months after the opinion in *1604 Oceola,* the Supreme Court of the United States handed down its decision in *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). In *Austin,* the government sought forfeiture of real property used to facilitate illegal drug transactions. The trial court had

"reluctantly" granted the forfeiture petition, but the Supreme Court reversed, concluding that the Excessive Fines Clause of the Eighth Amendment of the United States Constitution [16] applied to civil forfeiture proceedings. The Court reasoned that an examination of the civil-criminal dichotomy applied by any number of courts was unnecessary to resolve Austin's claims because forfeiture constituted *additional punishment for criminal conduct* and thus fell within the protections offered by the Excessive Fines Clause.[17] As the Court explicitly stated:

> The purpose of the Eighth Amendment, putting the Bail Clause to one side, *was to limit the Government's power to punish.* See *Browning–Ferris [Industries v. Kelco Disposal Inc.,]* 492 U.S. [257], 266–67, 275 [109 S.Ct. 2909, 2915–16, 2920, 106 L.Ed.2d 219 (1989) ].* The Cruel and Unusual Punishments Clause is self-evidently concerned with punishment. The Excessive Fines Clause *limits the Government's power to extract payments, whether in case or in kind,* 'as *punishment* for some offense.' *Id.,* at 265 [109 S.Ct. at 2915] (emphasis added). 'The notion of punishment, as we commonly understand it, *cuts across the division between the civil and the criminal law.' United States v. Halper,* 490 U.S. 435, 447–448, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989). 'It is commonly understood that civil proceedings may advance punitive and remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties.' *Id.,* at 447 [109 S.Ct. at 1901]. See also *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 554, 63 S.Ct. 379, 389, 87 L.Ed. 443 (1943) (Frankfurter, J., concurring). Thus, the question is not, as the United States would have it, whether forfeiture ... is civil or criminal, but rather whether it is punishment.

*Austin,* —— U.S. at ——, 113 S.Ct. at 2806, 125 L.Ed.2d 488

**16.** "Excessive bail shall not be required, *nor excessive fines imposed,* nor cruel and unusual punishments inflicted." (Emphasis added.)

**17.** The Court noted in *Austin* that the Eighth Amendment contained no language limiting its applicability to criminal proceedings.

(emphasis added) (footnote omitted).[18]  We thus believe that *Austin* would lead to a different conclusion in *1604 Oceola* on the question of the Garcias' chance of an erroneous deprivation of their property.  This difference, in our view, would require that counsel be appointed.

Furthermore, it is well settled that in a criminal proceeding, the accused, if indigent, is entitled to have counsel appointed at each critical stage of the proceeding because of the Sixth and Fourteenth Amendments.  *United States ex rel. O'Brien v. Maroney,* 423 F.2d 865 (3rd Cir.1970).  Sentencing is a critical stage of the proceedings.  *Commonwealth v. Johnson,* 428 Pa. 210, 236 A.2d 805 (1968).  *Austin* makes clear that forfeiture proceedings are *punishment in addition to any sentence of imprisonment imposed.*  Accordingly, we believe that if an indigent is entitled to have counsel appointed for the imposition of sentence, that defendant is also entitled to have counsel appointed in further proceedings where the government is attempting to exact additional punishment for the criminal conduct, despite the fact that those later proceedings are classified as "civil".

We believe the analysis used in *1604 Oceola* pertaining to the competing private interest of the individual and interest of the government applies to the present case.  However, unlike the Garcias in *1604 Oceola,* there exists a distinct likelihood of an erroneous deprivation in Dougherty's case.  Here, Dougherty has two legitimate arguments to present.  First, he could prove that the money which the government has seized is not the proceeds of illegal drug transactions, and hence not forfeitable.  Furthermore, even if the Commonwealth can prove that the money is proceeds of such illegal transactions, Dougherty can legitimately argue that forfeiture of the entire amount would constitute an excessive fine and is thus prohibited by the Eighth Amendment.[19]  *Austin.*  We are unwilling to

18.  The Court therefore remanded the matter so that a determination could be made of whether the forfeiture was constitutionally excessive, given the criminal conduct involved.

19.  Dougherty has not specifically raised the Excessive Fines Clause of the Eighth Amendment.  However, we do not believe this failure

hold, as the court did in *1604 Oceola,* that there is little likelihood of an erroneous deprivation of Dougherty's property.

We also believe that Dougherty's private property interest is substantial. The fact that the Garcias' equity in their house was a larger dollar amount than Dougherty's private property interest in the $9,847 does not make Dougherty's private interest any less important. Additionally, Dougherty's private interests involve more than money because *Austin* has recognized that the protections of the Eighth Amendment's Excessive Fines Clause apply to forfeiture proceedings.[20]

We recognize that the Commonwealth is not without interests in this case, including the interest in deterring illegal activity, specifically the illegal trafficking in drugs. However, Dougherty is already imprisoned and he is thereby deterred from future criminal activity to that extent. Furthermore, as the court stated in *Noriega:*

> precludes us from considering the effect of the holding in *Austin* as it relates to Dougherty's present claim. We note initially that *Austin* was handed down June 28, 1993. The trial court denied Dougherty's request for the appointment of counsel on April 8, 1993. Almost two centuries ago, the United States Supreme Court stated:
>
>> But if, subsequent to the judgment and before the decision of the appellate court a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied.... In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.
>
> *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801). *Accord Commonwealth v. Brown,* 494 Pa. 380, 431 A.2d 905 (1981). Dougherty, who has been imprisoned since late 1991, filed his pro se brief in this case on or about August 31, 1993. That brief, which is remarkable in its cogent explanation of Dougherty's position, undoubtedly raises the protections of the Due Process Clause of the Fourteenth Amendment, thereby, in our view, implicitly raising all of the protections of the Bill of Rights. *See Mapp.*

**20.** The existence of protections from the Bill of Rights is relevant in weighing the individual private interest involved. In *Noriega,* the court engaged in an analysis of the *Eldridge* tripartite test. In discussing the defendant's private interest, the court stated, "There can be *no question that the interest affected here is substantial and compelling.* At stake is the defendant's *Sixth Amendment right* to counsel of choice." *Noriega,* 746 F.Supp. at 1543 (emphasis added).

Certainly the Government has a strong interest in combatting the drug epidemic which plagues this country, *but this effort must never be at the expense of an accused's constitutional rights.* As Judge Gonzalez of this District Court has aptly stated: 'Neither the Congress nor the people intended that the Bill of Rights be a fatality in the war on drugs.' *United States v. Certain Real Estate Property,* 612 F.Supp. [1492,] 1497–98 [ (S.D.Fla.1985) ].

*Noriega,* 746 F.Supp. at 1545 (emphasis added).

We must also consider the additional burdens imposed upon the Commonwealth by any appointment of counsel. While the funding to pay for such an appointment is always a concern, we must note that the Legislature has already determined that public defenders have the duty to represent indigent defendants "[i]n any other situations where representation is constitutionally required." Section 6 of the Public Defenders Act, Act of December 2, 1968, P.L. 1144, *as amended,* 16 P.S. § 9960.6(a)(11) (Supp.1993–94). Therefore, public defenders, who are already being funded, could provide the necessary representation without any undue strain on the public fisc. Even if increased funding is necessary, however, such increases are those that the public must bear.[21] Furthermore, we wholeheartedly agree with the court in *1604 Oceola* when it concluded, "Perhaps the most substantial imposition upon the government would be requiring the [the government] to oppose an attorney in a complicated and abstruse field where the [government] normally expects to meet only pro-se litigants struggling through the claimant process." *Id.* at 1197. Additionally, the right to a jury trial in a civil forfeiture proceeding is guaranteed by article 1, § 6 of the Pennsylvania Constitution, *Commonwealth v. One (1) 1984 Z–28 Camaro Coupe,* 530 Pa. 523, 610 A.2d 36 (1992), *a right which Dougherty has chosen to exercise in this case.* Not only must Dougherty

---

**21.** As the court stated in *Eldridge,* "Financial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard.... But the government's interest, and hence that of the public, in conserving scarce fiscal and administrative resources is a factor that must be weighed." *Id.,* 424 U.S. at 348, 96 S.Ct. at 909.

struggle with the law of forfeiture; he must also make important tactical decisions in how to present his case before a jury and challenge the case of the Commonwealth. Impositions upon the Commonwealth are insufficient to deny the appointment of counsel where Dougherty faces such difficulties.

We therefore conclude that balancing the factors called for in *Eldridge* overcome the *Lassiter* presumption against the appointment of counsel in cases where no personal liberty interest is at stake. Although Dougherty's liberty interest is not threatened in this case, there are other significant and substantial private property interests which are involved, including his right to protection from excessive fines under the Eighth Amendment[22] of the United States Constitution. Because of all of these considerations, we believe that Dougherty is constitutionally entitled to the appointment of counsel in this case.

One final point must be discussed. The trial court could decide that some or all of the money involved should not be forfeited, thereby requiring the return of any such money to Dougherty. In that event, Dougherty might no longer be indigent. Should this occur, we believe that the trial court should determine the cost to the taxpayers of the representation provided to Dougherty and order him to reimburse any such costs to the extent that Dougherty has funds to do so.

Reversed.

## ORDER

AND NOW, this 1st day of February, 1994, the April 8, 1993 order of the Court of Common Pleas of Franklin County

---

**22.** The Pennsylvania Supreme Court has just held that the Excessive Fines Clause of art. 1, § 13 of the Pennsylvania Constitution was not violated when the trial court ordered forfeiture of a defendant's house based *upon evidence at the hearing on the forfeiture petition* which showed that the house had been used on an ongoing basis in the defendant's illegal drug trafficking operation. That conclusion was based upon a decision *on the merits of the case.* Since a decision on the merits of the Commonwealth's forfeiture petition against Dougherty's property must await the presentation of evidence, *In re King Properties,* 535 Pa. 321, 635 A.2d 128 (1993) does not compel a different result.

at Misc.Vol. 1, pg. 571A is reversed and the matter is remanded for the trial court to appoint counsel to represent Arthur J. Dougherty.

Jurisdiction relinquished.

SMITH, J., dissents.