**Donald HARRIS, Petitioner,**

v.

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 10, 1997.

Decided June 19, 1998.

---

4.  (R. at 70–71).

5.  (R. at 80).

Donald Harris, petitioner, for himself.

Randall N. Sears, Camp Hill, for respondent.

Before COLINS, President Judge, and LEADBETTER, J., and JIULIANTE, Senior Judge.

LEADBETTER, Judge.

Donald Harris (petitioner) has petitioned *pro se* for review of an order of the Department of Corrections (Department) assessing damages against him as a result of his involvement in the stabbing of another inmate while housed in one of the Commonwealth's correctional institutions. In conjunction with his petition for review, petitioner filed a motion to proceed *in forma pauperis* and a motion requesting the appointment of counsel. Pursuant to this court's order of July 31, 1997, petitioner was granted leave to proceed *in forma pauperis* and the Department was directed to file a response to petitioner's motion for the appointment of counsel addressing the applicability of this court's decision in *Commonwealth v. $9,847.00 U.S. Currency*, 161 Pa.Cmwlth. 548, 637 A.2d 736 (1994)[1] to an indigent inmate's appeal arising under *Holloway v. Lehman*, 671 A.2d 1179 (Pa.Cmwlth.1996). The Department has filed its response and the issue of petitioner's entitlement to court appointed counsel is now before us for disposition.[2]

On July 20, 1988, petitioner was determined to be guilty of institutional misconduct for his involvement in the stabbing of another inmate while housed at the State Correctional Institution (SCI) at Huntington. Thereafter, on November 2, 1989, petitioner was again found guilty of institutional misconduct for damaging institution property, striking a lieutenant with a spear and attempting to strike an officer with a piece of wood during a disturbance at the same facility. The sanctions imposed as a result of each determination of misconduct included the payment of fair value for property lost or

1. There, a panel of this court held that an indigent defendant is constitutionally entitled to the appointment of counsel in a civil forfeiture action filed under the Controlled Substances Forfeiture Act, 42 Pa.C.S. §§ 6801–02. In reaching this conclusion, we emphasized that a forfeiture action is a proceeding in which the government is attempting to exact additional punishment for criminal conduct. 637 A.2d at 744. We also noted that there existed a likelihood of an erroneous deprivation of the defendant's rights without counsel because the forfeiture could constitute an excessive fine in violation of the Eighth Amendment's Excessive Fines Clause. *Id.* at

745. However, following the entry of our order in this case on July 31, 1997, the Pennsylvania Supreme Court reversed our decision in *$9,847.00 U.S. Currency. See Commonwealth v. $9,847.00 U.S. Currency*, 550 Pa. 192, 704 A.2d 612 (1997).

2. We note that petitioner has not filed a brief in this matter although he was granted an extension of time in which to do so. Further, although the Public Defenders' Association was invited to file an *amicus* brief in this matter, they declined to do so as well.

damaged or for expenses incurred as a result of the misconduct.

On November 6, 1996, a *"Holloway"* hearing was held to determine the amount of damages incurred as a result of petitioner's misconduct.[3] Carol Teegarden, a purchasing agent for one of the SCIs, represented the Department at the hearing and petitioner represented himself. With respect to the first incident, Teegarden submitted into evidence a list of the medical expenses resulting from the inmate's stab wounds. In addition, documents to support the list of medicals were submitted.[4] With respect to the second incident, Teegarden entered into evidence a letter signed by the Superintendent at SCI Huntington which stated that $1,929.05 was assessed against petitioner as a result of his participation in the disturbance.[5] Petitioner then cross-examined Teegarden.

Based upon the evidence presented, the hearing officer concluded in his proposed findings of fact and conclusions of law that petitioner was liable for $4,930.66, his share of the expenses resulting from the stabbing incident, but that petitioner was not liable for any of the costs associated with the second incident due to the Department's failure to present any evidence to support its claim of damages. The Commissioner of the Department then entered an order for reimbursement against the petitioner in accordance with the hearing officer's recommendation. Petitioner subsequently filed his petition for review and the present application for the appointment of counsel.

In *$9,847.00 U.S. Currency*, the Commonwealth filed a civil forfeiture action against Arthur Dougherty following Dougherty's guilty plea to various drug offenses. Specifically, the Commonwealth sought forfeiture of the confiscated sum of $9,847.00 on the grounds that such was the proceeds of Dougherty's illegal drug transactions. Dougherty subsequently sought court appointed counsel. When the matter eventually reached this court, we held, as previously noted, that due process required the appointment of counsel. The Supreme Court disagreed and reversed our decision. 550 Pa. 192, 704 A.2d 612 (1997). In concluding that due process did not require the appointment of counsel, the Supreme Court employed the following analysis:

[I]n certain limited situations, the Due Process Clause of the Fourteenth Amendment to the United States Constitution may require court appointed counsel.[6] In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court set forth three factors which must be weighed to determine whether there is a right to court-appointed counsel in a civil matter: (1) the private interest at stake; (2) the government interest at stake; and (3) the likelihood of an erroneous decision. [424 U.S. at 325, 96 S.Ct. 893].[7] There is a presumption, how-

---

3. In *Holloway*, incarcerated individuals, who had been determined to be guilty of destroying prison property, sought a declaration that the subsequent administrative assessment of damages against them and the deduction of such from their prison accounts constituted a deprivation of property without due process of law since they were not first afforded an opportunity to challenge the assessment of damages. This court agreed with their contention and held that before any assessment of damages against an inmate could occur, the inmate must be provided with a hearing that comports with the Administrative Agency Law. 671 A.2d at 1182.

4. The medical expenses totaled $49,306.00 and were assessed evenly among the ten inmates found to be involved in the stabbing. We note, however, that the documents offered by the Department in support of its list of expenses do not appear in the original record.

5. Teegarden testified that the assessment against petitioner was determined by evenly assessing the estimated damages of $73,344.00 among the 38 inmates involved. She also testified, however, that the actual damages incurred were $42,568.18 and, therefore, each individual, including petitioner, was liable only for $1,120.22.

6. The Fourteenth Amendment provides, in relevant part, that "No state shall ... deprive any person of life, liberty, or property, without due process of law." Due process has been described as a "flexible notion which calls for such procedural safeguards as a particular situation demands to ensure fundamental fairness to a potentially aggrieved litigant." *Corra v. Coll*, 305 Pa.Super. 179, 451 A.2d 480, 482 (1982).

7. Although not mentioned by our Supreme Court in its analysis, the *Mathews* court also held that the probable value, if any, of additional procedural safeguards must be considered. 424 U.S. at 334, 343–44, 96 S.Ct. 893.

ever, that "an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Lassiter v. Department of Social Services,* [452 U.S. 18, 26, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)] (no per se right to court-appointed counsel in proceeding to terminate parental rights). Taken together, these cases require that the outcome of the examination of the three factors enunciated in *Mathews* be weighed against the *Lassiter* presumption that an indigent is only entitled to appointed counsel when his physical liberty is at stake. *Lassiter, supra* at 27, 101 S.Ct. 2153.

*$9,847.00 U.S. Currency,* 550 Pa. at 197, 704 A.2d at 615 (footnotes added). The court further commented that the *Lassiter* presumption against court appointed counsel is a heavy one which is not easily overcome. *Id.* at 200, 704 A.2d at 616.[8]

■ In applying the *Mathews* three factor analysis, the court noted that the private interest at stake in forfeiture proceedings is a property interest, which requires less due process protection than life or liberty interests. *Id.* at 197, 704 A.2d at 615. As to the second *Mathews'* factor, the government interest at stake, the Supreme Court observed that the government's interest included the deterrence of illegal drug activity by depriving dealers of the ill-gotten profits of their endeavors. In this regard, the court noted that such interest was advanced through forfeiture actions. The court further observed that the government's interest was also largely financial, both in terms of the proceeds derived from the action as well as the cost involved in providing court appointed counsel to all indigent claimants in forfeiture proceedings. *Id.* at 197–98, 704 A.2d at 615–16.[9] Such interests are entitled to significant weight. *Id.* at 200, 704 A.2d at 616.

Finally, addressing the third factor, the court opined that the risk of an erroneous decision in a forfeiture action was generally minimal because usually a conviction or a guilty plea has preceded the forfeiture proceeding. Moreover, the specific circumstances present in Dougherty's case made the risk of an erroneous deprivation of property unlikely. There, the money at issue was found in close proximity to other evidence of drug activity and a portion of the money was traceable to undercover drug transactions. *Id.*

The court then concluded that since the three factors, when considered alone, failed to compel the conclusion that Dougherty was entitled to counsel, they necessarily failed to overcome the heavy presumption against the appointment of counsel. Therefore, the court held that due process did not require the appointment of counsel in a civil forfeiture proceeding. *Id.* at 201, 704 A.2d at 617.

■ Applying the rationale of *$9,847.00 U.S. Currency* to the instant case, we similarly conclude that due process does not require the appointment of counsel to an indigent inmate who is appealing an assessment of damages following a *Holloway*-type hearing. As in *$9,847.00,* petitioner does not have a life or liberty interest at stake. Rather, his interest is financial, a property interest which commands a lower level of due process protection.

The Department's interest, on the other hand, is more substantial and we conclude that it is entitled to greater weight. The Department's interest includes deterring inmates from engaging in conduct which causes damage or harm to Institutional property and persons by holding such inmates financially responsible for their destructive mis-

8. The private interest at stake in *Lassiter* was the termination of parental rights. Although the Court acknowledged that the private interest was extremely important, that the state shared that interest and had a weak pecuniary interest, and that the potential complexity of termination proceedings could make the risk of an erroneous decision great, the Court held that due process did not require the appointment of counsel unless the parents' interests were at their strongest, the state's interest was at its weakest and the risk of error was at its greatest. *Lassiter,* 452 U.S. 18, 31, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

9. The cost of providing counsel to an entire class of individuals is a proper and relevant factor to consider in determining whether court appointed counsel is required. *$9,847.00 U.S. Currency,* 550 Pa. at 197, 704 A.2d at 615, *citing Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

conduct. The Department's interest is also financial. In this regard, the Department is concerned with recovering the costs it and the Commonwealth's taxpayers incur as a result of inmate misconduct. Moreover, the cost of providing court appointed counsel to all indigent inmates in such appeals would be significant.

Finally, with respect to the last factor, the risk of an erroneous deprivation of property is generally minimal. Prior to any assessment of damages hearing, the inmate must first be found guilty of Institutional misconduct which results in actual damage or harm. The nature of the inquiry and the evidence submitted at such hearings is not complex. Both parties usually appear without counsel and the evidence generally consists of the actual invoices which are paid by the Department and generated by independent, unbiased third parties.[10] The ultimate assessment does not hinge on credibility of witnesses. Moreover, the ultimate findings regarding the assessment of damages are reviewable by this court under a substantial evidence standard. *Holloway,* 671 A.2d at 1182. In light of our standard of review and the nature of the proceedings, we fail to see how the appointment of counsel on appeal will significantly minimize a risk of an erroneous deprivation of property.

Accordingly, we conclude that the presumption against the appointment of counsel has not been overcome in this case, and that due process does not require that petitioner be appointed counsel to pursue his appeal from the

assessment of damages against him.[11] Therefore, his application for the appointment of counsel is denied.

**10.** This case is not unlike *Piper v. Popp,* 167 Wis.2d 633, 482 N.W.2d 353 (1992), wherein the Supreme Court of Wisconsin held that an indigent inmate had no constitutional right to court appointed defense counsel in a civil tort action for damages resulting from the inmate's shooting and wounding of two other people.

**11.** Our decision is consistent with those from other jurisdictions where the judiciary has concluded that there is not a right to court appointed counsel in an administrative proceeding. *See*

### ORDER

AND NOW, this 19th day of June, 1998, Donald Harris' application for appointment of counsel in this appeal is hereby denied.

*generally Feeney v. Securities and Exchange Comm'n,* 564 F.2d 260 (8th Cir.1977) (securities salesmen not entitled to court appointed counsel to represent them in sanction proceedings before the Commission even though their ability to earn a livelihood in the securities industry at stake); *Borror v. Department of Investment, Div. of Real Estate,* 15 Cal.App.3d 531, 92 Cal.Rptr. 525 (1971) (real estate salesman not entitled to court appointed counsel in a proceeding to revoke real estate license).