560 A.2d 901

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Thomas McDERMOND, Appellee.**

Commonwealth Court of Pennsylvania.

Argued March 10, 1989.

Decided June 21, 1989.

18

Jeffrey Hellman, Asst. Dist. Atty., William G. Chadwick, Jr., First Asst. Dist. Atty., Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Unit and Ronald D. Castille, Dist. Atty., Philadelphia, for appellant.

Dennis J. Cogan, Anthony J. Petrone, Philadelphia, for appellee.

Before COLINS and SMITH, JJ., and KALISH, Senior Judge.

COLINS, Judge.

The District Attorney's Office of Philadelphia, on behalf of the Commonwealth of Pennsylvania (Commonwealth), appeals from an order of the Philadelphia County Court of Common Pleas (trial court) which denied the Commonwealth's petition for forfeiture of Nine Thousand Two Hundred Twenty-five Dollars ($9,225.00) in currency.

On July 31, 1987, officers detailed to the City-wide Vice Unit of the Philadelphia Police Department went to 7850 Oxford Avenue for the purpose of executing a search

warrant on apartment No. 4. The warrant named Thomas McDermond (appellee), as well as any other person capable of maintaining an illegal bookmaking operation at that location as individuals to be searched, as well as the premises. Prior to the issuance of the warrant, the police conducted surveillance of appellee's apartment for a period of ten days from July 15th, 1987, to July 25, 1987. During this period, the police observed appellee's car parked outside 7850 Oxford Street during "prime betting" hours but not at other times. The police also telephoned apartment No. 4's two telephone numbers during this time. It was found that during "prime betting" hours the telephone was answered on each occasion on the first ring or immediately thereafter[1] but was not answered at any other times. Based upon these occurrences, the police concluded that an illegal gambling operation was being conducted from apartment No. 4, 7850 Oxford Avenue and sought a warrant for the premises.

When the police arrived at 7850 Oxford Avenue on July 31, 1987, they observed appellee leaving the building carrying a small cardboard box. Appellee got into his car and placed the box on the car seat beside him. Officer Joseph Alley approached appellee's vehicle and stopped appellee before he could pull away. A search of the box revealed tally work containing approximately $1,000,000.00 worth of bets, numerous pages of individual bets on various sporting events which corresponded to the tally work, point spreads for basketball games from March 28th to April 5th, a telephone bill for 7850 Oxford Avenue[2] and other bills and receipts. A search of appellee's person uncovered Four Thousand Two Hundred Twenty-five Dollars ($4,225.00) from his front pocket, Five Thousand Dollars ($5,000.00)

1. According to the Commonwealth, it is common practice for bookmakers to answer their telephones as quickly as possible during prime betting times (approximately two hours before game time until game time) to enable them to take as many bets as possible.

2. This bill was addressed to Edward Careless. When appellee was taken to the police station following the search of his apartment, he indicated that he was also known as Edward Careless. Appellee explained that Careless was his ex-wife's maiden name.

from his back pocket, and an apartment key. The police used the key to gain entrance to apartment No. 4 in order to search that premises.

Inside the apartment, the police found thousands of illegal lottery bets and more than six hundred fifty (650) horse racing bets. The police also found other bets which corresponded to the tally work seized from the cardboard box. The police placed all of the gambling records which were seized from the cardboard box and from inside the apartment on property receipt number 103966, and all of the currency seized on property receipt number 103963.

On December 8, 1987, the Commonwealth filed a petition for forfeiture of the Nine Thousand Two Hundred Twenty-five Dollars ($9,225.00) as derivative contraband used in violation of Section 5513 of the Crimes Code, 18 Pa.C.S. § 5513. Following a hearing, the Commonwealth's petition was initially granted. However, upon appellee's petition for reconsideration, the trial court vacated its original order, denied the Commonwealth's petition for forfeiture and ordered the money returned to appellee. The trial court concluded that the Commonwealth had established that a gambling operation was being conducted from apartment No. 4 at 7850 Oxford Avenue and that appellee was involved with that operation. Nevertheless, the Court concluded that the Commonwealth failed to present sufficient evidence to establish that the money was an integral part of the illegal operation. The Commonwealth appealed that order to the Superior Court of Pennsylvania, which transferred the matter to this Court. The Commonwealth filed a reconsideration petition with the Superior Court regarding the transfer; however, that petition was denied.

The Commonwealth now appeals, raising two issues for our determination: (1) whether the Commonwealth Court has appellate jurisdiction over this matter; and (2) whether the Commonwealth presented sufficient evidence to establish that the money seized from appellee's pockets was an integral part of an illegal gambling operation and, therefore, subject to forfeiture.

■ The District Attorney argues that this Court does not have appellate jurisdiction over the case *sub judice* as a result of the Pennsylvania Supreme Court decision in *Duggan v. 807 Liberty Avenue, Inc.*, 447 Pa. 281, 288 A.2d 750 (1972), which held that a District Attorney is not an officer of the Commonwealth government. Therefore, it is argued that since this forfeiture proceeding was filed by the District Attorney of Philadelphia County and not an official possessing statewide authority, this Court does not have jurisdiction over the present matter.

However, pursuant to Section 5513(b) of the Crimes Code, 18 Pa.C.S. § 5513(b), the seizure and forfeiture of gambling devices, including money, are controlled by Section 602 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 6–602, which details the procedure for the forfeiture of intoxicating liquors. *See Commonwealth v. Two Electronic Poker Game Machines*, 502 Pa. 186, 465 A.2d 973 (1983).

Section 602(a) of the Liquor Code, 47 P.S. § 6–602(a) provides: "The proceedings for the forfeiture or condemnation of all property shall be in rem, in which *the Commonwealth shall be the plaintiff* and the property the defendant." (Emphasis added.)

Section 762(a)(1)(ii) of the Judicial Code, 42 Pa.C.S. § 762(a)(1)(ii), provides for the exclusive appellate jurisdiction of the Commonwealth Court in all civil proceedings by the Commonwealth government. Accordingly, by virtue of Section 602(a) of the Liquor Code naming the Commonwealth as plaintiff in forfeiture proceedings instituted pursuant to the Liquor Code, jurisdiction over the present matter is properly vested with the Commonwealth Court.

■ Turning next to the forfeiture issue, it is well settled that "[m]oney is not, ordinarily, itself, an instrumentality of gambling." *Fairmont Engine Company v. Montgomery County*, 135 Pa.Superior Ct. 367, 371, 5 A.2d 419, 420

(1939). However, money may be seized and forfeited to the Commonwealth if it is derivative contraband of an illegal gambling operation. *Id.* Pennsylvania courts have held that money in such instances may be forfeited when the circumstances are such that it is clearly apparent that the money formed an integral part of the illegal gambling operation and, being commingled with other such money, had not, previous to the seizure, been reclaimed and taken back into possession of the player nor been received and reduced to the exclusive possession of the winner or owner of the gambling device, or proprietor of the gambling establishment. *Appeal of Curcio,* 106 Pa.Superior Ct. 53, 161 A. 627 (1932).

Although the foregoing principles have consistently been espoused and affirmed through the years, a perusal of some of the cases applying these principles illustrates the nonuniform manner in which they have been applied. For example, the most recent case on point is *Sugalski v. Cochran,* 365 Pa.Superior Ct. 370, 529 A.2d 1104 (1987), in which the Superior Court found that the state did not meet its burden of proving that over one and a half million dollars seized during an investigation of an illegal gambling operation was derivative contraband. In *Sugalski,* state police obtained a search warrant of certain homes in order to search for evidence of a suspected illegal gambling operation. The search turned up various gambling paraphernalia, as well as assorted amounts of cash stored in various places throughout the house. The Superior Court denied forfeiture of most of the money, however, reasoning that no gambling paraphernalia was found with any of the money and found that there was nothing about the money which would indicate that it was being used or had been used for illegal gambling or any unlawful purpose.

Likewise, the Superior Court in *Connelly v. Weber,* 182 Pa.Superior Ct. 187, 126 A.2d 474 (1956), refused to grant seizure on money found in the pocket of a crap game

operator reasoning that the money was not an integral part of an illegal gambling operation. The only money found to be subject to forfeiture was the money which was found on the craps table.

In *Commonwealth v. Petrillo*, 158 Pa.Superior Ct. 354, 45 A.2d 404 (1946), the Superior Court allowed forfeiture of a sum of $1,030.00. When state police officers entered appellant's premises (an alleged horse betting parlor) and announced a raid, an individual present at the time reached into his pocket and removed $638.00 from his right trouser pocket and attempted to hide the money under a sofa. When this man was searched, a total of $392.00 was taken from his left trouser pocket. Although an answer was filed which averred that the money in his left trouser pocket was his personal money, the Superior Court found that it was within the province of the trial court to infer that all of the money was being held awaiting the result of races and the determination of winners. Accordingly, the forfeiture was affirmed.

In *Pannulla v. Rosenberg*, 171 Pa.Superior Ct. 233, 90 A.2d 267 (1952), the evidence presented also justified the forfeiture of money. In that case, Pannulla was arrested on charges of pool selling and bookmaking. $600.00 was found in his bureau drawer by police officers and was subsequently seized. When police raided Pannulla's apartment, they found assorted gambling paraphernalia and $94.00 which Pannulla admitted he had received from bookmaking which was taken from his jacket pocket. Six Hundred Dollars, however, was found in Pannulla's bedroom, in 10 dollar and 20 dollar denominations, underneath some clothes. Although Pannulla contended that the money constituted savings from a service disability pension and earnings as a landscape gardener, the Superior Court, nevertheless, found his story incredible. Accordingly, it found that Pannulla acted merely as a stakeholder and affirmed the forfeiture.

The procedure for forfeiture pursuant to Section 602(d) of the Liquor Code, 47 P.S. § 6–602(d), is such that upon the filing of a forfeiture petition by the Commonwealth, a hearing is scheduled if a claim is filed which asserts a right of possession in the seized property. At this hearing, the Commonwealth must establish by a preponderance of the evidence that the property was unlawfully used or possessed. Once the Commonwealth meets this burden, the burden shifts to the claimant to establish (1) that he is the owner of the property; (2) that he lawfully acquired the same; and (3) that it was not unlawfully used or possessed. See 47 P.S. § 6–602(e).

In the instant matter, appellee maintains that the trial court properly concluded that the evidence presented by the Commonwealth was insufficient to establish that the money seized was an integral part of an illegal gambling operation. Additionally, appellee suggests that even if the Commonwealth had established that the money was gambling profits, at the time of seizure the money had been reduced to his exclusive possession and, therefore, lost its connection with the gambling operation. Accordingly, it is appellee's position that the money was not subject to forfeiture. We disagree.

At the forfeiture hearing, the Commonwealth's witnesses detailed the information gathered by the police during the ten-day investigation into the suspected illegal gambling operation. These witnesses also testified concerning the thousands of illegal lottery, sports and horse wagers, as well as corresponding tally sheets, confiscated from the box appellee was carrying and from inside apartment No. 4. The trial court concluded on the basis of all of the evidence that the Commonwealth had established that appellee was involved in an illegal gambling operation. Nevertheless, the trial court ruled that the Commonwealth failed to establish the "essential connection" of the confiscated money to the gambling operation.

■ We believe that the Commonwealth did establish by a preponderance of the evidence that the seized money was derived from gambling transactions and constituted either a reserve from which winners were to be paid or profits from the operation. The trial court apparently reached its conclusion because of a belief that direct empirical evidence is necessary to connect the money to the operation. However, we do not believe that money must be labeled "gambling money" before it can be forfeited along with other gambling paraphernalia.[3]

Following two weeks of surveillance, appellee was apprehended leaving a bookmaking operation while carrying a veritable plethora of tally sheets and wagering slips with his pockets literally bulging with cash. The Commonwealth's evidence, both direct and circumstantial, would certainly support a conclusion that the money was an integral part of the illegal gambling operation. Therefore, we find that the trial court erred in determining that the Commonwealth did not sustain its burden of proof at the forfeiture hearing. Accordingly, pursuant to Section 602(e) of the Liquor Code, the burden shifted to appellee to establish that he was the owner of the money, that it was lawfully acquired and that it was not unlawfully used or possessed. However, appellee declined to present any evidence following the presentation of the Commonwealth's case. Because appellee failed to establish the elements of Section 602(e) of the Liquor Code, forfeiture of the $9,225.00 was required.

The order of the trial court is reversed.

## ORDER

AND NOW, this 21st day of June, 1989, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is reversed.

3. Certainly, if this were the case, money would rarely be forfeited, as few illegal gambling operators make it quite so blatant that money has been derived from illegal gambling activity.