## INDIAN TRAILS PROPERTY OWNERS ASSOCIATION, INC. a/k/a Indian Rocks Property Owners Association

### v.

Thomas J. GILL and Nancy A. Gill, His Wife, Daniel G. Pagella and Louisa G. Pagella, Frederick D. Ruziecki, Miguel A. Rivera and Hortensia Rivera, His Wife, George J. Poiani and Catherine Poiani, His Wife, John Palermo and Martha Palermo, His Wife, Kimberly A. Rosensweet, Valerie A. Rosensweet and Lawrence Rosensweet, Husband and Wife.

Appeal of Thomas J. GILL and Nancy A. Gill, His Wife, Daniel G. Pagella and Louisa C. Pagella, Frederick D. Ruziecki, Miguel A. Rivera and Hortensia Rivera, His Wife, John Palermo and Maria Palermo, His Wife, Kimberly A. Rosensweet, Valerie A. Rosensweet, Lawrence Rosensweet, Husband and Wife.

Superior Court of Pennsylvania.

Argued Nov. 16, 1995.

Filed May 13, 1996.

Robert F. Bernathy, Hawley, for appellants.

Ronald M. Bugaj, Honesdale, for Indian Trails, appellee.

Before CAVANAUGH, McEWEN and HOFFMAN, JJ.

PER CURIAM:

Appeal quashed. Jurisdiction relinquished.

CAVANAUGH, Judge, concurring.

I join the well-reasoned majority memorandum. I write separately in the form of a Concurring Opinion simply to point out that I feel this case was properly considered and decided by this panel even though jurisdiction is proper with the Commonwealth Court of Pennsylvania since there has been no objection to our assumption of jurisdiction. *See* Pa.R.A.P. 741.

As pointed out by the majority, this case involves the affairs of Indian Rocks Property Owners Association, Inc., a non-profit corporation. Proper jurisdiction of this appeal lies with the Commonwealth Court of Pennsylvania, 42 Pa.C.S. § 762(a)(5). I write to urge that any future appeals in this case, or other appeals involving the affairs of Indian Trails Property Owners Association, Inc., be pursued in the Commonwealth Court and to encourage that other similar appeals involving non-profit corporations be pursued in that court where rightful jurisdiction is vested.

## In re ONE 1988 TOYOTA COROLLA (BLUE TWO–DOOR SEDAN) PA LICENSE TPV 291.

### Appeal of David LEBRON.

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1993.

Decided April 30, 1996.

Mary McNeill Zell, for Appellant.

Norman Gross, Assistant District Attorney, for Appellee.

Before COLINS, President Judge,
DOYLE, J. (P.), and LORD, Senior Judge.

DOYLE, Judge.

David Lebron appeals from two orders of the Court of Common Pleas of Philadelphia County which denied his motion to return to him a 1988 Toyota Corolla XR–5 automobile and granted the Commonwealth's petition to forfeit the car as derivative contraband.

The Commonwealth contends that Lebron, although the title owner of the automobile, is

nothing more than the sham owner and that the true owner is one Angel Marrero,[1] a notorious drug dealer who is now serving a lengthy prison sentence (12 to 30 years). Lebron, on the other hand, contends that he is the real owner, and further, that this Court lacks jurisdiction to hear his appeal.

The relevant facts are as follows. During the course of a police investigation of Angel Marrero and the drug activity at a bar known as Anita's Place at 2812 North Lawrence Street in Philadelphia, Marrero was seen by a police detective operating the subject 1988 Toyota Corolla XR–5 on several occasions. Furthermore, the car was reported to be seen in front of Anita's Place on at least a dozen other occasions when Marrero was there. Much of this activity was recorded on videotape and admitted into evidence at the hearings before the trial court.

On one occasion, police intercepted a telephone call Marrero made to the service department of a Toyota dealership which was doing some service work on the car. Marrero stated: "This is Angel, ah ... you have my Toyota there"; he then identified the car by make, model and year. (Commonwealth Exhibit No. 1, Transcript of telephone call, 11/10/89.) He asked the serviceman, named Anthony, if he had the owner's card for the vehicle, stating that he, Marrero, needed to pick the owner's card up. When asked whose name the car was under, Marrero told the serviceman that he could not recall the name and both laughed about that fact. At another time, police also observed Marrero installing stereo speakers in the car in front of the bar at Anita's Place.

On November 22, 1989, as the result of the investigation of Marrero's activities,[2] police obtained a search warrant for Anita's Place at 2812 North Lawrence Street and for 2801 North Lawrence Street where police believed Marrero, among others, was operating the drug operation. As the result of the raid, a substantial amount of cocaine was confiscated from both locations as well as eight guns and four or five automobiles. The Toyota XR–5, however, was seized a few days later under a different warrant and at a different address. The car at the time it was picked up was parked in front of 4631 Rosehill Street, which was the address of Marrero's ex-wife, who had the keys to the car. This address is approximately eighteen blocks from where Lebron lives.

On January 5, 1990, the Commonwealth filed a forfeiture petition pursuant to Sections 6801–6802 of the Judicial Code (hereinafter the Forfeiture Act),[3] and the trial court issued a rule to show cause why the Toyota XR–5 should not be forfeited. On February 21, 1990, unaware that the Commonwealth had filed its petition, Lebron filed a "Motion For Return of Property" pursuant to Pa. R.Crim. P. 324, alleging that he was the lawful owner of the automobile. At the hearings before the trial court on the forfeiture issue, the Commonwealth presented evidence that Lebron was the owner of the car in name only, and that, in fact, Marrero was the real owner of the vehicle.

Lebron introduced the certificate of title in his name, testified that he had purchased the car by trading in another vehicle plus paying $1,500 cash, and that he financed the balance of the cost through a finance company. The trial court, however, found that Lebron presented *no proof of his purchase*, but was only able to produce evidence of the financing. Significantly, he could not produce an agreement of sale and produced no evidence at all that he had *ever* been seen operating the car. Lebron lives in the 3700 block of North 7th Street, but testified that he kept the Toyota XR–5 in a garage at 4631 Rosehill Street, which was, as indicated, approximately eighteen blocks away. Marrero was arrested by

---

1. Throughout the notes of testimony taken on three different occasions from June 5, 1990 to July 31, 1991, the name "Marrero" is often spelled with only two "r's," *i.e.*, "Marero," rather than with three "r's," *i.e.*, "Marrerro." For the sake of uniformity, we will adopt the latter spelling.

2. Two Philadelphia detectives from the Dangerous Drug Offenders Unit testified that between October 3, 1991 and November 7, 1991, they made numerous purchases of large quantities of cocaine, saw Marrero directing the drug operation, and on November 7, 1991, purchased an ounce of cocaine for $750 directly from Marrero.

3. 42 Pa.C.S. §§ 6801–6802.

police at that address, the home of his ex-wife, Evelyn Marrero,[4] and the Toyota XR–5 was seized there. Additionally, the keys to the Toyota XR–5 were in the possession of Ms. Marrero when police executed the November 29th warrant. Lebron was not even aware that the car had been seized until two weeks after it had been confiscated.

After hearing all of the evidence, the trial judge concluded that Lebron was the owner in name only, that his registered ownership was merely a sham ownership, and that Marrero actually exercised dominion and control over the automobile. Accordingly, Claimant's motion was denied, and the vehicle was ordered forfeited to the Commonwealth. This appeal followed.[5]

Lebron presents three arguments for our review: (1) this Court lacks jurisdiction to hear this appeal; (2) the trial court abused its discretion in holding that he, Lebron, had failed to sustain his burden of proving that he was the lawful owner of the car; and (3) the vehicle should not have been forfeited because the Commonwealth did not sustain its burden of proof under the forfeiture statutes.

■■■ Lebron first argues that this case should not have been transferred from the Superior Court to the Commonwealth Court because Claimant filed a motion to return the property pursuant to Pa. R.Crim. P. 324, which provides:

(a) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he is entitled to lawful possession thereof. Such

motion shall be filed in the Court of Common Pleas for the judicial district in which the property was seized.

(b) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

Claimant contends that because Pa. R.Crim. P. 324 is a rule of *criminal* procedure, these proceedings are no longer civil, and therefore, such an appeal is not within this Court's appellate jurisdiction as provided in Section 762 of the Judicial Code, 42 Pa.C.S. § 762 (vesting jurisdiction in this Court in appeals from final orders of the courts of common pleas in *civil actions* commenced by the Commonwealth government).[6]

■■■ However, the mere fact that the procedure which governs Lebron's possessory claim is described by a rule of criminal procedure does not determine jurisdiction and does not transform the essential character of the in rem action of a forfeiture into a criminal proceeding. Section 6802(a) of the Forfeiture Act, 42 Pa.C.S. § 6802(a), declares that the "proceedings for the forfeiture or condemnation of property, the sale of which is provided for in this chapter, shall be in rem, in which the Commonwealth shall be the plaintiff **and the property the defendant.**" (Emphasis added.) Just as under Section 5513(b) of the Crimes Code,[7] which deals with the confiscation and forfeiture of gambling devices, and Section 602(a) of the

4. The evidence establishing that Evelyn Marrero was Angel Marrero's ex-wife and that she lives at 4631 North Rosehill Street was hearsay evidence, but this was not made an issue on appeal by Lebron.

5. The appeal was originally filed in the Superior Court, but on motion of the Commonwealth was transferred to this Court.

6. Claimant, citing *Commonwealth v. Pomerantz,* 393 Pa. Superior Ct. 186, 573 A.2d 1149 (1989) (if the Commonwealth does not file a petition for forfeiture, a court has no authority to order for-

feiture in response to a motion under Pa. R.Crim. P. 324 for the return of property), also states that although the Commonwealth "technically" filed a forfeiture petition with the "Philadelphia Clerk of Quarter Sessions," the trial court's order granting the forfeiture was a nullity, since it was never physically "presented" to the trial judge. This argument is specious. The petition was properly filed and considered by the trial judge, who entered an appropriate order. It has never been required that such motions be physically submitted to the court at the hearing.

7. 18 Pa.C.S. § 5513(b).

Liquor Code,[8] which details the procedure for the forfeiture of intoxicating liquor, where the property has been declared forfeitable under a criminal or quasi-criminal statute, the nature of the forfeiture proceeding itself is nevertheless in rem and is, therefore, a civil proceeding. *Commonwealth v. McDermond,* 127 Pa.Cmwlth. 17, 560 A.2d 901 (1989). Accordingly, proceedings under both Pa. R.Crim. P. 324 and the Forfeiture Act are not criminal proceedings as such; instead, they are "civil in form, but quasi-criminal in character." *Commonwealth v. Landy,* 240 Pa. Superior Ct. 458, 469, 362 A.2d 999, 1005 (1976). Moreover, many rights that would normally be afforded a criminal defendant in a criminal matter do not apply to motions for the return of property,[9] nor is a criminal burden of proof, *i.e.,* "beyond a reasonable doubt," applied. *Id.* Rather, Pa. R.Crim. P. 324 merely provides a procedure which allows a person "aggrieved by a search and seizure warrant" to present the issue of wrongful detention to a proper tribunal. In practice, it is simply a "mirror image" of a forfeiture action under the Forfeiture Act. The rule does not, and cannot, control the exercise of jurisdiction under the Judicial Code. *See Department of Transportation v. Joseph Bucheit & Sons Co.,* 506 Pa. 1, 8 n. 3, 483 A.2d 848, 851 n. 3 (1984) ("It is axiomatic that a rule of procedure cannot operate to confer jurisdiction."); *Smaha v. Landy,* 162 Pa.Cmwlth. 136, 638 A.2d 392 (Rules of Civil Procedure cannot abridge, enlarge or modify substantive rights and jurisdiction established by statute), *petition for allowance of appeal denied,* 539 Pa. 660, 651 A.2d 546 (1994).

■ In actual practice, there are seldom any significantly distinguishing features in terms of the standards applied between a forfeiture action commenced by the Commonwealth and motions to return property commenced by an individual. Under Pa. R.Crim. P. 324, an aggrieved person must establish first that he is entitled to the lawful *possession* of the property. *Pomerantz.* The burden then shifts to the Commonwealth to resist the return of property by proving that it is contraband. Pa. R.Crim. P. 324.[10] The Forfeiture Act is different from Pa. R.Crim. P. 324 in that the Commonwealth has the initial burden of proof. The Commonwealth must prove that the property was unlawfully used or possessed or is otherwise forfeitable under Section 6801(a) of the Forfeiture Act. After satisfying its burden by a preponderance of the evidence, *Landy,* the burden then shifts to the claimant or the person claiming ownership to either prove a statutory defense, such as the "innocent owner" defense under Section 6802(j) of the Forfeiture Act, or to disprove the Commonwealth's evidence that the property is contraband. In this respect, there is no compelling reason why proceedings under either the Forfeiture Act or Pa. R.Crim. P. 324 should not be heard by this Court on appeal.

■ Of course, there may be certain situations where, because of the very nature of the order of the court, the issue of forfeiture would be criminal in nature, *e.g.,* where the appeal is from a judgment of sentence following a criminal defendant's guilty plea of driving under the influence of alcohol and the trial judge, as a condition of the defendant's probation, orders that the defendant's truck be forfeited. *Commonwealth v. Crosby,* 390 Pa. Superior Ct. 140, 568 A.2d 233 (1990). In such circumstances, any appeal from the trial court's judgment of sentence would properly fall within the appellate jurisdiction of the

---

**8.** Act of April 12, 1951, P.L. 90, *as reenacted and amended by,* Act of June 29, 1987, P.L. 32, 47 P.S. § 6–602(a).

**9.** *But see Commonwealth v. $9,847.00 U.S. Currency,* 161 Pa.Cmwlth. 548, 637 A.2d 736, (1994), *petition for allowance of appeal granted,* 540 Pa. 605, 655 A.2d 993 (1995), where we held that under certain circumstances where the Commonwealth seeks forfeiture under the Forfeiture

Act, an indigent defendant is entitled to court appointed counsel.

**10.** Although the language of Pa. R.Crim. P. 324 is less than clear on this point, even if the court denies the motion to return the property to a person claiming ownership, it is not automatically forfeited to the Commonwealth until the Commonwealth files a petition to forfeit, either orally or in writing. *Pomerantz.*

Superior Court.[11]

There are, of course, strong policy reasons to vest jurisdiction in the Commonwealth Court for most forfeiture and "forfeiture-like" proceedings. The most obvious is the importance of a unitary appellate review of the same type of case. It would not make much sense to bifurcate these appeals between the Superior Court, for review of an order denying an appellant's motion under Pa. R.Crim. P. 324, and the Commonwealth Court, for appellate review of an order of forfeiture under the Forfeiture Act. This would be a needless waste of time and resources for both the courts and the litigants. Moreover, unitary review will result in a consistent body of case law and decrease the possibility of conflicting authority, which will provide guidance for both the Commonwealth and private citizens alike. Further, it will discourage "forum shopping" between the Commonwealth and Superior Courts created by a race to be first to file either a petition under the Forfeiture Act or a motion to return property under Pa. R.Crim. P. 324.[12]

Accordingly, we hold that this Court has the authority to hear appeals from orders disposing of motions for the return of property pursuant to Pa. R.Crim. P. 324 in addition to our jurisdiction under the Forfeiture Act itself. *See also* Section 705 of the Judicial Code, 42 Pa.C.S. § 705 (both intermediate appellate courts have the authority on their own motion to transfer "any appeal to the other court for consideration and decision with any matter pending in such other court involving the same or related questions of fact, law or discretion").

■■■ We now turn to the merits of Lebron's appeal.[13] Lebron first argues that he is entitled to lawful possession of the automobile under Pa. R.Crim. P. 324(a).[14] The trial court found that although he provided some indicia of ownership, he was, in fact, not the true owner of the Toyota XR–5, but only the "sham" owner. We agree with the trial court's judgment.

■■■ Lebron argues that because his name was on the vehicle registration, he presented sufficient evidence to prove that he was the lawful owner of the Toyota XR–5. However, title ownership, as well as actual possession, is only one element of ownership, *Commonwealth v. One 1988 Suzuki Samurai,* 139 Pa.Cmwlth. 68, 589 A.2d 770 (1991), and here, Lebron never established that he ever "possessed" the car. The trial court properly looked beyond the "paperwork" to analyze whether Lebron also exercised dominion and control of the vehicle. *Id.* In *Suzuki,* the woman claiming ownership asserted that she was the lawful owner of the vehicle because she was the title owner and had the financial responsibility for the vehicle. However, this Court found that the vehicle had been purchased for her daughter's use at work, was never driven by the woman, and was in fact garaged at her daughter's residence some distance away from her home. Similarly in this case, the trial court found that the keys to the Toyota XR–5 were in possession of Marrero's ex-wife, the car was garaged eighteen blocks

---

11. President Judge Rowley writing for the Superior Court in *Crosby,* pointed out that in that case, an "appeal [was] from a judgment of sentence rather than from an order in a *civil* action relating to forfeiture." *Id.* at 154, 568 A.2d at 240 (emphasis in original).

12. It is also worth noting that transferring both forfeiture appeals and appeals from Pa. R.Crim. P. 324 orders to this Court will not interfere with the criminal proceedings which are clearly within the Superior Court's jurisdiction and expertise. These proceedings are almost completely independent of the underlying criminal proceedings, and the Superior Court has held that appeals from orders denying the motion to return property by criminal defendants are interlocutory and unappealable during the pendency of the criminal action. *Commonwealth v. Lewis,* 288 Pa. Superior Ct. 198, 431 A.2d 357 (1981).

13. Our scope of review is limited to examining whether the findings of fact made by the trial court are supported by competent evidence, and whether the trial court abused its discretion or committed an error of law. *Commonwealth v. $8006.00 U.S. Currency,* 166 Pa.Cmwlth. 251, 646 A.2d 621 (1994); *see also SAS, Inc. v. State Police Bureau of Liquor Control Enforcement,* 162 Pa. Cmwlth. 263, 638 A.2d 455 , *petition for allowance of appeal denied,* 539 Pa. 660, 651 A.2d 545 (1994).

14. Significantly, on the forfeiture petition he does not allege that he is an innocent owner under Section 6802(j).

away from Lebron's home, and Lebron was never seen driving it. Furthermore, the evidence was clear that Marrero at all times exercised dominion and control over the automobile. Accordingly, we agree that Lebron was only a "sham" owner, and failed to sustain his initial burden of proof under Pa. R.Crim. P. 324. *See also Shapley v. Commonwealth*, 150 Pa.Cmwlth. 106, 615 A.2d 827 (1992) (Purported owner of a 1981 DeLorean automobile was only the sham owner even though she was the titleholder. She never drove the car and the keys were in her son's possession when their dwelling was searched as part of a police investigation); *Commonwealth v. One 1985 Cadillac Seville*, 371 Pa. Superior Ct. 390, 538 A.2d 71 (1988) (Although purported owner held the title and registration, the court found that his brother had actually bought the car with cash and titled it in purported owner's name to insulate it from forfeiture).

Lebron also argues that the Commonwealth failed to sustain its burden of proving that the Toyota XR–5 was forfeitable under the Act.

 Under the Forfeiture Act, "[a]ll conveyances, including aircraft, vehicles or vessels, which are used or are intended for use to transport, *or in any manner to facilitate* the transportation, sale, receipt, possession or concealment of, property [in violation of the Controlled Substance, Drug, Device and Cosmetic Act [15]] ...." are subject to forfeiture by the Commonwealth. Section 6801(a)(4) of the Forfeiture Act, 42 Pa.C.S. § 6801(a)(4) (emphasis added). In this case, the trial court found that Angel Marrero had total control of the Toyota XR–5. He was often seen driving it, installed stereo speakers, and referred to the car as "his" when speaking with the service department of the Toyota dealership. There was also evidence adduced from which the trial court could and did conclude that the Toyota XR–5 was used to facilitate activities which are prohibited under the Controlled Substance, Drug, Device and Cosmetic Act. Specifically, the trial court found that, Angel Marrero, although not arrested at the time of the raid, because he evaded police at that time, was present at the bar near the time of the raid; that he was a notorious drug dealer now serving time; that he exercised control over the car, and that the car was seen in the area of the bar at least a dozen times.

Accordingly, the judgment of the trial court is affirmed.

This matter was argued before a panel consisting of President Judge James Gardner Colins, Judge Joseph T. Doyle, and Senior Judge Charles Wright. Because of the death of Senior Judge Wright, the case was submitted on briefs to Senior Judge Charles A. Lord for consideration as a member of the panel.

### ORDER

NOW, April 30, 1996, the orders of the Court of Common Pleas of Philadelphia County in the above-captioned matter are hereby affirmed.

---

**15.** Act of April 14, 1972, P.L. 233, *as amended,*     35 P.S. § 780–101 to § 780–144.