IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,                :
Office of the Attorney General and           :
Pennsylvania State Police                     :
                                              :
           v.                                 :    No. 805 C.D. 2019
                                              :    SUBMITTED:  August 23, 2019
Jack O. Edmundson, Jr.,                       :
$18,733.02 US Currency                        :
and Assorted Items of                         :
Personal Property,                            :
                    Appellant                 :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                FILED:  November 26, 2019


Jack O. Edmundson, Jr. (Edmundson), an inmate at a Pennsylvania state correctional institution, appeals *pro se* from an order of the Court of Common Pleas of Indiana County (trial court).  The trial court granted a petition by the Commonwealth for civil forfeiture of cash and other personal property.  After thorough review, we affirm.

## I. Background

In 2013, Edmundson was involved in selling illegal lottery tickets in an enterprise in Indiana County known as a brown bag lottery.  Tickets would be printed for fictitious fundraisers and sold to individuals in advance of a designated Pennsylvania Lottery drawing.  Once the designated drawing was held, anyone

holding a winning brown bag lottery ticket for that drawing would write his name on the back and turn it over to the person who sold it, who would then obtain the money and pay the winner. The winner customarily gave the seller a sizeable tip.

Frank Petro (Petro), a local gun shop owner, was also involved in selling brown bag lottery tickets. Edmundson approached Petro in the fall of 2013, pretending to be an undercover informant for the State Police and the Attorney General (AG). Edmundson claimed the police and the AG were investigating Petro for illegal gambling, but if Petro would stop selling tickets and turn over all the ticket money in his possession, Edmundson would make the problem go away. Petro turned over $145,000[1] to Edmundson and promised to stop selling lottery tickets.

Sometime later that fall, Edmundson was arrested for impersonating a police officer after he unlawfully arrested and handcuffed a minor. The incident was reported on the local television news. Petro saw the report and began to suspect Edmundson had lied to him about being an undercover informant.

The record does not indicate what, if any, communications occurred between the two men regarding Petro's suspicions. However, in December 2013, Edmundson went to Petro's gun shop. Security video showed Edmundson entering the empty shop and picking up a handgun from behind the counter. When Petro entered the shop from a room in the rear, Edmundson shot him twice in the chest, and Petro fell to the floor. Edmundson then tried to set fire to the shop, but Petro managed to rise and tried to stop him. As the two men struggled, Edmundson shot Petro in the head, killing him. Edmundson himself was shot in the femur. Because of his injury, Edmundson was forced to call 911 for help.

---

[1] The parties dispute whether $145,000 was the exact amount given to Edmundson by Petro. However, the exact amount is not relevant to the issues in this appeal.

2

Edmundson was charged with numerous crimes, including homicide, attempted arson, robbery, theft, dealing in proceeds of unlawful activities, corrupt organizations, receiving stolen property, lotteries, and impersonating a public servant. During their investigation, police learned Edmundson had bought several expensive items, including several all-terrain vehicles (ATVs) with a trailer and accessories, after receiving the money from Petro. Police also discovered Edmundson's wife had removed $20,000 from the couple's joint bank account after his arrest and had it deposited in another bank account in her cousin's name. Police seized what remained of that $20,000, as well as the ATVs, trailer, and related accessories.

The Indiana County District Attorney (DA) announced he would seek the death penalty in the case. Edmundson subsequently entered into a plea bargain in which he pleaded guilty to first-degree murder in exchange for the DA's agreement not to pursue the death penalty. In September 2014, Edmundson was sentenced to life in prison without parole on the first-degree murder charge. The remaining charges were dismissed.

After further investigation, the Commonwealth filed a petition for civil forfeiture of the currency from the bank account and various items of personal property, including the ATVs, trailer, and accessories, believed to have been purchased with the money Edmundson obtained from Petro. Edmundson filed a petition for return of the property. The trial court consolidated the two proceedings.

The trial court initially allowed the same court-appointed counsel who represented Edmundson during the criminal proceedings to remain as counsel for the forfeiture proceeding. Edmundson subsequently filed a petition for post-conviction relief in the criminal case, claiming counsel had been ineffective in his

3

representation related to the plea bargain. For some time thereafter, at Edmundson's request, counsel continued the civil forfeiture representation. Eventually, however, counsel filed a petition to withdraw, which the trial court granted. Because the forfeiture was civil in nature, the trial court did not appoint replacement counsel for Edmundson. Notably, by the time counsel withdrew, the trial court had already completed the hearings in the forfeiture matter.[2]

Edmundson did not deny his participation in the illegal lottery. However, he contended that the currency from the bank account was lawfully his and that he purchased the ATVs and other property with lawfully obtained funds.

After holding two evidentiary hearings, the trial court concluded Edmundson had not substantiated his claim that the seized property was lawfully his. The trial court also found specifically that Edmundson was not a credible witness.[3] By contrast, the Commonwealth offered extensive credible evidence, including the expert testimony of both a police investigator and an outside consultant, demonstrating that the $145,000 in brown bag lottery money Edmundson took from Petro was the only possible source of the currency in the bank account and the funds used to purchase the other seized property. Accordingly, the trial court granted the forfeiture petition. This appeal by Edmundson followed.

---

[2] The only proceeding held after counsel's withdrawal was a brief hearing concerning a proposed settlement reached between the Commonwealth and Petro's widow. Edmundson objected to the settlement and was present at this hearing by video conference. However, he was not a party to the settlement and it had no effect on his claims or defenses in the forfeiture matter. Thus, his presence without counsel did not prejudice him.

[3] For example, at the forfeiture hearing, Edmundson testified his shooting of Petro was an accident, notwithstanding his guilty plea and the video record of the crime. Original Record (O.R.) Item #70A at 147-48, 154, 156.

## II. Issues on Appeal

Edmundson's arguments are difficult to discern because his appellate brief contains neither a statement of issues nor an argument divided into separate issues. However, from our careful examination of the brief, we identify the following arguments by Edmundson.[4] For clarity, we have arranged his arguments into three categories – procedural arguments, legal arguments, and factual arguments.

Edmundson asserts two procedural errors. He contends he was not properly served with the forfeiture petition until nearly 10 months after it was filed. He also argues the trial court improperly ignored his written and verbal requests for a jury trial.

Edmundson suggests the trial court committed legal error by granting common law civil forfeiture. He also asserts that forfeiture of property allegedly related to the illegal lottery was improper, because he was not convicted of any offenses related to the illegal lottery. Further, he contends the trial court was biased and his court-appointed counsel was ineffective, and both prevented him from introducing evidence that would have proven his ownership of the forfeited property.

Edmundson's assertions of factual errors relate to the weight of the evidence. He argues the Commonwealth failed to present clear and convincing evidence in support of its forfeiture petition. He also contends the Commonwealth failed to prove the seized property was contraband or derivative contraband. He argues there was not a sufficient nexus between the seized property and the illegal lottery to

---

[4] In his concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), Edmundson listed additional issues not addressed in his brief on appeal in this Court. *See* O.R. Item #64. To the extent Edmundson may have desired to assert any additional arguments not discernible in our review of the record, they are waived for failure to raise them properly or develop them sufficiently in the brief to allow meaningful review by this Court. *See Commonwealth v. Green 'N Grow Composting, LLC*, 201 A.3d 282 (Pa. Cmwlth. 2018) (argument waived where not sufficiently developed to allow meaningful review on appeal).

justify forfeiture. In addition, he asserts the Commonwealth agreed, as part of his criminal plea bargain, that all of the seized property would be returned to him. Thus, Edmundson claims the Commonwealth breached the plea agreement by seeking forfeiture of the property.

### III. Discussion

### A. Procedural Issues

### 1. Service of the Forfeiture Petition

On appeal,[5] Edmundson challenges the Commonwealth's service of the forfeiture petition. Our review of Edmundson's Concise Statement of Errors on Appeal (Statement) reveals he did not preserve this issue.

The Pennsylvania Rules of Appellate Procedure allow the trial court to direct the appellant to file a concise statement of the errors complained of on appeal. Pa. R.A.P. 1925(b). Issues not included in the appellant's statement are waived. Pa. R.A.P. 1925(b)(4)(vii).

Here, the trial court issued a directive for the Statement pursuant to Rule 1925(b). *See* Original Record (O.R.) Item #57. Edmundson's challenge to service of the forfeiture petition is not mentioned in his Statement. *See* O.R. Item #64. Therefore, it is waived.

Moreover, Edmundson was not prejudiced by the alleged delay in service. He was able to participate in all stages of the forfeiture proceeding. Therefore, any alleged defect in service would not be grounds to overturn the trial court's decision. *See Commonwealth v. 542 Ontario St., Bethlehem, Pa.*, 989 A.2d 411 (Pa. Cmwlth.

---

[5] Our review of the trial court's decision on a civil forfeiture petition is limited to determining whether the trial court's findings of fact were supported by substantial evidence and whether the trial court abused its discretion or committed an error of law. *Commonwealth v. $301,360.00 U.S. Currency*, 182 A.3d 1091 (Pa. Cmwlth. 2018).

6

2010) (*en banc*), *overruled in part on other grounds by Commonwealth v. 1997 Chevrolet*, 106 A.3d 836 (Pa. Cmwlth. 2017) (rejecting challenge to adequacy of service where petitioner was able to participate in forfeiture proceeding).

## 2. Jury Trial Demand

Edmundson asserts he was entitled to a jury trial on the forfeiture petition. He contends he filed a written demand for a jury trial, as well as verbal requests. He insists the trial court erred in denying his requests. We disagree.

There is some authority supporting Edmundson's contention that there is a constitutional right to a jury trial in a civil forfeiture proceeding. *See Commonwealth v. One (1) 1984 Z-28 Camaro Coupe*, 610 A.2d 36 (Pa. 1992) (citing PA. CONST. art. I, § 6 ("trial by jury shall be as heretofore, and the right thereof remain inviolate")). The issue here, however, is not whether Edmundson had a right to a jury trial, but the adequacy of his jury trial demand.

> The relevant Rule of Civil Procedure provides, in pertinent part:
>
> In any action in which the right to jury trial exists, that right shall be deemed waived unless a party files and serves a written demand for a jury trial not later than twenty days after service of the last permissible pleading. The demand shall be made by endorsement on a pleading or by a separate writing.

Pa.R.C.P. No. 1007.1(a).

As a jury trial demand must be filed in writing and served, any verbal requests Edmundson may have made for a jury trial would have been ineffective. The only written request he alleges was in his amended petition for return of the seized property. However, Edmundson filed that amended petition *pro se* at a time when he was represented by counsel. The law is settled that a *pro se* filing by a represented party constitutes "hybrid" representation which is not permitted either in a trial court or on appeal. *Commonwealth v. Padilla*, 80 A.3d 1238, 1259 (Pa. 2013) (citing,

7

*inter alia*, *Commonwealth v. Ali*, 10 A.3d 282, 293 (Pa. 2010) (*pro se* filing by represented party was a "legal nullity")). Edmundson acknowledges the trial court denied his *pro se* jury demand because he was represented by counsel at the time he filed it. Br. for Appellant at 22. Thus, the trial court properly refused to allow hybrid representation by acceding to Edmundson's demand for a jury trial.

## B. Legal Issues

### 1. Common Law Forfeiture

In *Commonwealth v. Irland*, 193 A.3d 370 (Pa. 2018), our Supreme Court held there is no common law civil forfeiture in Pennsylvania. Therefore, statutory authority is required for any civil forfeiture. *Id.* Edmundson contends the trial court granted an improper common law[6] civil forfeiture in this case. We discern no merit in this argument.

The Commonwealth filed its forfeiture petition before *Irland* was decided. Thus, the petition properly sought both common law **and** statutory forfeiture. However, the trial court, recognizing the pendency of *Irland* before our Supreme Court at the time it issued its decision, resolved the forfeiture issue solely with reference to the Forfeiture Act, 42 Pa.C.S. §§ 5801-5808.[7] As discussed further in Section C.3 below, forfeiture of gambling devices, which may include currency, is authorized by statute and expressly applies the provisions of the Forfeiture Act:

> Any gambling device possessed or used in violation of the provisions of [18 Pa.C.S. § 5513(a) (relating to gambling offenses)] shall be seized and forfeited to the Commonwealth. The forfeiture shall be conducted in accordance with 42 Pa.C.S. §§ 5803 (relating to asset forfeiture), 5805

---

[6] Although Edmundson refers to "commonwealth" forfeiture in his argument, the context indicates he is discussing common law forfeiture.

[7] *Formerly* 42 Pa.C.S. §§ 6801-6802 (repealed by the Act of June 29, 2017, P.L. 247, effective July 1, 2017).

8

(relating to forfeiture procedure), 5806 (relating to motion for return of property), 5807 (relating to restrictions on use), 5807.1 (relating to prohibition on adoptive seizures) and 5808 (relating to exceptions.

18 Pa.C.S. § 5513(b).  Contrary to Edmundson's argument, the trial court did not base its decision on the common law.

## 2. Dismissal of Lottery-Related Criminal Charges

Edmundson argues the trial court lacked authority to grant forfeiture of property related to his illegal lottery activities, because all of the criminal charges concerning those activities were dismissed.  This argument is without merit.

The law is settled that a civil forfeiture does not require an underlying criminal conviction.  *See Commonwealth v. 2010 Buick Enclave VIN #GALRBED8J122029*, 99 A.3d 163, 170 (Pa. Cmwlth. 2014) ("it is well settled in this Commonwealth, and throughout the history of forfeiture in this country, that a conviction is not required to proceed with a statutory *in rem* forfeiture"); *542 Ontario St.*, 989 A.2d 411 (civil forfeiture not dependent on conviction of underlying criminal charge); *Commonwealth v. Perez*, 941 A.2d 778 (Pa. Cmwlth. 2008) (civil forfeiture not reversed despite subsequent dismissal of underlying criminal charges).  Under the Forfeiture Act, this is equally true where charges are dismissed pursuant to a plea agreement.  *See* 42 Pa.C.S. § 5805(m) (acquittal of crime authorizing forfeiture creates rebuttable presumption that property at issue was lawfully possessed by defendant, but "acquittal" does not include plea agreements).

Here, in exchange for Edmundson's guilty plea to first-degree murder, the Commonwealth dismissed the other charges against him.  However, as the authorities cited above demonstrate, dismissal of those charges as part of a plea agreement did not circumscribe the Commonwealth's ability to seek forfeiture of illegally obtained assets.  Moreover, Edmundson expressly admits his involvement

in the illegal lottery. O.R. Item #70A at 102, 139; Br. for Appellant at 30. Further, the murder of Petro, to which Edmundson pleaded guilty, apparently arose from Edmundson's illegal lottery activities. In these circumstances, the absence of criminal convictions on other lottery-related charges is immaterial.[8]

### 3. Impartiality of Trial Court

Edmundson asserts the trial court was biased. As a consequence, he alleges he was prevented from introducing evidence and witnesses that would have established his lawful ownership of the property subject to the forfeiture petition. Edmundson points to factors he claims show bias by the trial court. We reject Edmundson's argument.

Edmundson contends the trial court allowed some *pro se* filings, but not others, while he was represented by counsel. Specifically, he claims the trial court, on November 28, 2017, granted an October 20, 2017 *pro se* petition for return of personal property seized during Edmundson's arrest. As a purported citation to the record, Edmundson's brief states only "See Exhibits." Br. for Appellant at 31. However, our review of the record reveals no "exhibits" containing either the described petition or a trial court order granting it. In fact, the original record contains no entries at all from the period at issue.[9] We therefore find no record support for Edmundson's argument. Moreover, we fail to see how an alleged order by the trial court, granting relief which Edmundson claims to have requested, would indicate that the trial court was biased against him.

---

[8] In a related argument, Edmundson suggests the forfeiture was disproportionate to the severity of the lottery-related crimes. However, proportionality is not an issue where the property forfeited is the proceeds of the illegal activity. *Commonwealth v. $23,320.00 U.S. Currency*, 733 A.2d 693 (Pa. Cmwlth. 1999).

[9] We surmise that Edmundson may be referring to filings allegedly made in his post-conviction proceeding in the criminal case. That record is not before us.

Edmundson also questions why the trial court allowed counsel to continue representing him after he filed a petition for post-conviction relief asserting that the same counsel was ineffective in the criminal case. The record answers this question.

At the forfeiture hearing on October 2, 2017, Edmundson's court-appointed counsel informed the trial court that Edmundson had filed a petition alleging ineffective assistance of counsel during the criminal proceeding. Counsel stated, "I discussed this with Mr. Edmundson. I asked him if he still wanted me to be his attorney and represent him on this. . . . Mr. Edmundson informed me on Saturday that he does want me to stay on this case and represent him. . . ." O.R. Item #70A at 5. The trial court expressly asked Mr. Edmundson, who was present by video conference, whether counsel's statement was correct, and Edmundson answered, "Yes." *Id.* Thus, it is evident from the record that the trial court was acceding to Edmundson's own wish in allowing counsel to continue the representation. Again, we see nothing in the trial court's compliance with Edmundson's request that suggested any bias against him.

### 4. Effectiveness of Court-Appointed Counsel

Edmundson complains that his court-appointed counsel was ineffective because he did not allow Edmundson to control the litigation strategy, in that he did not demand a jury trial and did not present witnesses Edmundson wanted to call. This argument lacks merit.

Court-appointed counsel is not bound to follow his client's instructions concerning matters of trial strategy. *See Commonwealth v. Auker*, 681 A.2d 1305 (Pa. 1996) (failure to call a witness requested by the client does not establish ineffectiveness of counsel, because such a decision is a matter of trial strategy); *accord Commonwealth v. Thomas*, 879 A.2d 246 (Pa. Super. 2005) (court-appointed

11

counsel properly exercised his professional judgment by participating in trial despite defendant's instruction not to present any defense). Counsel was not ineffective because he followed his own judgment on the most effective strategy.

## C. Factual Issues

Although Edmundson asserts several arguments concerning the weight of the evidence, he failed to include any such issues in his Statement pursuant to Pa.R.A.P 1925(b). Accordingly, he has waived all factual arguments. *See* Pa.R.A.P. 910(a)(5). However, for completeness, we briefly address Edmundson's factual arguments, all of which are without merit.

### 1. Applicable Burdens of Proof

The Forfeiture Act sets forth the shifting burdens of proof in a civil forfeiture action. 42 Pa.C.S. § 5801(j). The Commonwealth has the initial burden "to establish in the forfeiture petition that the property is subject to forfeiture." *Id.* Once that burden is satisfied, the claimant (Edmundson here) must show by a preponderance of the evidence that he owns the property and acquired it lawfully. *Id.* In the event the claimant satisfies his burden, the Commonwealth must then "establish by clear and convincing evidence that the property in question was unlawfully used, possessed or otherwise subject to the forfeiture." *Id.*

Here, Edmundson contends the Commonwealth failed to sustain its burden of proof by clear and convincing evidence. We discern no merit in this contention. The trial court concluded Edmundson was unable to demonstrate that he acquired the seized property lawfully. The record contains substantial evidence that the funds deposited in the seized bank account and used to purchase the other seized property were the proceeds of an illegal lottery, and moreover, were illegally obtained by Edmundson from Petro. Thus, the burden of proof never shifted from Edmundson

12

to the Commonwealth, and the trial court did not need to reach the question of whether the Commonwealth met its burden by clear and convincing evidence.

Nonetheless, the trial court expressly concluded the Commonwealth proved by clear and convincing evidence that the property at issue was subject to forfeiture. The extensive evidence presented by the Commonwealth, including two experts, eliminated all possible sources of the currency in the seized bank account and the funds used to purchase the other seized assets, other than the $145,000 Edmundson obtained from Petro. Thus, we find no error in the trial court's decision.

### 2. Status as Contraband or Derivative Contraband

Regarding his own petition for return of the property, Edmundson relies on Rule 588 of the Pennsylvania Rules of Criminal Procedure, which provides that a person aggrieved by seizure of his property may move for the return of the property on the basis that he is lawfully entitled to possession. Pa. R. Crim. P. 588(A). "*If the motion is granted*, the property shall be restored unless the court determines that such property is contraband or derivative contraband,[10] in which case the court may order the property to be forfeited." Pa. R. Crim. P. 588(B) (emphasis added).

Edmundson argues the Commonwealth failed to prove the property at issue was contraband. However, as the trial court found Edmundson was not lawfully entitled to possession, it did not grant his motion for return of the property. Therefore, whether it was either contraband or derivative contraband was irrelevant.

---

[10] "Contraband," as used in the Forfeiture Act, refers to an item marked with a counterfeit trademark; illegally manufactured or possessed liquor, alcohol, or malt or brewed beverages; or unstamped or unlawfully stamped cigarettes. 42 Pa.C.S. § 5808(a). However, as discussed below, currency (or property purchased with it) may be forfeited as derivative contraband of illegal gambling if there is a sufficient nexus between the currency and the gambling activity. *Commonwealth v. McDermond*, 560 A.2d 901 (Pa. Cmwlth. 1989).

13

### 3. Nexus between Seized Property and Illegal Lottery

In a related argument, Edmundson contends the trial court erred in finding a nexus between his admitted involvement in the illegal brown bag lottery and the cash and other property seized by the Commonwealth. We disagree.

Any transfer of property pursuant to an illegal lottery is invalid and void. 18 Pa.C.S. § 5512. Here, the property transferred was the illegal lottery ticket money Petro turned over to Edmundson. The transfer of that property was invalid and void. Thus, Edmundson never had a legal right to that money.

Currency (or property purchased with it) is subject to forfeiture as derivative contraband if there is a sufficient nexus between the money and illegal gambling. Such a nexus exists where "it is clearly apparent that the money formed an integral part of the illegal gambling operation . . . ." *Commonwealth v. McDermond*, 560 A.2d 901 (Pa. Cmwlth. 1989) (applying prior law); *see Commonwealth v. Smith*, 722 A.2d 167 (Pa. Super. 1998).

This case is closely analogous to *Pannulla v. Rosenberg*, 90 A.2d 267 (Pa. Super. 1952), *cited and discussed in McDermond.* In *Pannulla*, the defendant was arrested for pool selling and bookmaking. *Id.* Police seized cash hidden in various areas in the defendant's home. *Id.* The defendant argued he saved the money from his disability pension and his wages from employment. *Id.* The court found his testimony incredible and concluded he was a stakeholder of illegal gambling money. *Id.* Accordingly, there was a sufficient nexus between the cash and the defendant's illegal gambling activity, and forfeiture was proper. *Id.* The Superior Court affirmed the forfeiture on appeal. *Id.*

Here, Edmundson testified that the money in the seized bank account and the funds used to purchase the ATVs, trailer, and accessories were the proceeds of his

disability benefits, student loans, and various jobs. The trial court properly rejected that testimony, as there was substantial evidence from the Commonwealth's witnesses establishing that the funds at issue could only have been part of the $145,000 in brown bag lottery ticket money Edmundson obtained illegally from Petro – money which, notably, Petro also had no legal right to possess. Accordingly, there was a sufficient nexus between the seized property and Edmundson's illegal lottery activities. The trial court did not err in concluding the seized property was subject to forfeiture.

## 4. Breach of Plea Agreement

Edmundson insists his counsel assured him all seized property would be returned to him as part of the plea agreement. However, the record is bare of any evidence of any agreement by the Commonwealth for the return of property. Therefore, the trial court did not err by rejecting Edmundson's contention.[11]

## IV. Conclusion

Based on the foregoing discussion, we affirm the order of the trial court.

ELLEN CEISLER, Judge

---

[11] To the extent that Edmundson suggests his counsel misinformed him, that issue presumably was or will be addressed in deciding Edmundson's request for post-conviction relief in his criminal case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,     :
Office of the Attorney General and   :
Pennsylvania State Police        :
                         :
       v.              :  No. 805 C.D. 2019
                         :
Jack O. Edmundson, Jr.,        :
$18,733.02 US Currency         :
and Assorted Items of           :
Personal Property,            :
            Appellant   :

# **O R D E R**

AND NOW, this 26th day of November, 2019, the order of the Court of Common Pleas of Indiana County is AFFIRMED.

_____
ELLEN CEISLER, Judge