Jonathan MASON, Petitioner

v.

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 14, 2005.

Decided Nov. 21, 2005.

Jonathan Mason, petitioner, pro se.

Jaime B. Resnick, Asst. Counsel and Barbara Adams, General Counsel, Camp Hill, for respondent.

BEFORE: PELLEGRINI, Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Jonathan Mason (Mason) petitions this Court *pro se* to review an order of the Department of Corrections (Department) directing him to reimburse the Department $77,723.25 from his inmate account for medical expenses it incurred as a result of prison misconduct.

Mason is an inmate currently incarcerated at the State Correctional Institute at Huntington (SCI–Huntington). On August 12, 2004, he was discovered lying on the ground in the weight area of the prison yard and was unresponsive. He was taken to the medical department and was given the anti-overdose medication Narcan and Valium due to his belligerent and combative behavior while in the medical department. Mason regained consciousness and allegedly told a prison nurse he had done "heroin and coke." An ambulance was called to transport Mason to J.C. Blair Memorial Hospital, a local hospital, then he was transported to Altoona General Hospital, diagnosed with intracranial bleeding and then "helicoptered" to UPMC Presbyterian Hospital (UPMC) in Pittsburgh to be examined by a neurosurgeon. While at UPMC, the treating physician's report stated Mason's urine toxicology tested positive for cocaine.[1]

To recover the cost it incurred as a result of the medical treatment it gave Mason for the controlled substances he took, the Department gave him a written notice of assessment seeking $77,723.25. The Department's authority to assess damages against an inmate comes from the Prison Medical Services Act (Act), Act of May 16, 1996, P.L. 220, 61 P.S. § 1013(b). Under Section 3(b), 61 P.S. § 1013(b), "an inmate may be required to pay a fee for medical services provided because of injuries the inmate inflicted upon himself or another inmate." In implementing that provision, 37 Pa.Code § 93.10(a)(2)(iii),

provides that inmates found guilty of Class II misconducts (a class that includes possession of contraband, i.e., non-prescribed drugs, and possession or use of a dangerous or controlled substance) may be subjected to the payment of the fair value of property lost or destroyed or for expenses incurred as a result of the misconduct. The Act does not allow deductions from an inmate account. Section 5 of the Act, 61 P.S. § 1015, allows the Department to recover "any amount owed for medical service fees by an inmate upon release from prison through a civil action brought within one year of the inmate's release ..."

A Departmental hearing was held, but the hearing was not recorded either stenographically or electronically. The only evidence as to the amount of the medical bills appears to be from a representative of SCI–Huntington's business office who computed the figures on Mason's UPMC medical bills and verified the cost of $77,723.25 for Mason's medical treatment. As a result, the hearing examiner assessed from Mason's inmate account $77,723.25. Mason appealed the assessment to final review before the Department's chief hearing examiner who denied the appeal finding that the hearing examiner considered all the testimony and evidence as to how the total amount was calculated and the hearing examiner's decision was well-documented.

Mason then filed this petition for review[2] with this Court alleging the De-

---

1. As a result of this conduct and even though he denied that he used any drugs, Mason was given a Class 1 misconduct for violating the Department's Policy DC–ADM 801 for # 36 possession of contraband (non-prescribed drugs) and # 22 possession or use of a dangerous or controlled substance; placed in 90 days disciplinary custody; removed from his job; and his prison account was to be as-

sessed for the medical costs rendered due to his near overdose.

2. This Court's scope of review of an administrative agency's determination is limited to determining whether any constitutional rights were violated, an error of law was committed, or whether necessary findings of facts are supported by substantial evidence. *Brome v.*

partment erred in assessing his inmate account for $77,723.25 by violating his due process right to property during the assessment hearing. He contends the Department violated his due process right to property by denying him a stenographer at his assessment hearing pursuant to the Administrative Agency Law (AAL), 2 Pa. C.S. 504, which states "[a]ll testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings." In *Holloway v. Lehman*, 671 A.2d 1179 (Pa.Cmwlth.1996), this Court held that a decision made by the Commissioner of Corrections through his subordinates to take money from an inmate's account without the inmate's consent was an "adjudication" under Section 1 of Law, 2 Pa.C.S. § 101[3] and subject to its provisions. We then went on to hold that the AAL requires that a hearing be conducted after reasonable notice and that the inmate must be heard, *that all testimony must be recorded, and a full and complete record of the proceedings must be kept* pursuant to 2 Pa. C.S § 504 (emphasis added); reasonable examination and cross-examination must be allowed, 2 Pa.C.S. § 505, and the adjudication must be in writing and contain findings of fact and reasons for the decision. 2 Pa.C.S. § 507. We also held that failure to provide a proper hearing would render the adjudication invalid and would result in a remand. *See also Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981).

The Department, however, asserts that *Holloway* was effectively overruled when the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, was amended by Section 11 of the Act of November 26,

1997, P.L. 530. That amendment contained within 71 P.S. § 310–4(a) provides:

(a) When the Department of Corrections determines that there has been a financial loss or cost as a result of a violation of a written rule governing inmate behavior, including, but not limited to, property loss or damage or use of a controlled substance, **the department may require the prisoner to pay to the department, or to the person whose property has been lost or damaged, the value of the property or the costs incurred in the investigation and administrative review of the behavior.**

(b) The department shall develop written procedures relating to the determination, assessment and collection of the costs of losses due to inmate misconduct. When the procedures have been adopted by the department, the provisions of 2 Pa.C.S. Ch. 5 Subch. A (relating to practice and procedure of Commonwealth agencies) shall not apply to proceedings conducted by the department under this section.

(c) The department may deduct from an inmate's institutional account the amount of any judgment, court-ordered costs or assessments against the inmate under subsection (a). Notice of the deduction shall be provided to the inmate by certified mail or personal notice.

(Emphasis added.) As can be seen, this provision only affects *Holloway* in those instances where the Department is attempting to impose costs on an inmate's account relating to the investigation and administrative review of the inmate's behavior, not medical costs. In other instances where there is an attempt to assess an inmate's account, though, *Hol-*

*Department of Corrections*, 756 A.2d 87, 88 (Pa.Cmwlth.2000).

**3.** 2 Pa.C.S. § 101 defines an adjudication in relevant parts as: "any ... decision ... by an agency affecting personal or property rights ..."

*loway* holds that the provisions of the AAL must still be complied with where the Department seeks to assess an inmate's account.[4]

Accordingly, because the Department failed to comply with 2 P. C.S. § 504 by not providing all testimony to be stenographically recorded in order to create a full and complete record of the proceedings at Mason's assessment hearing, the Department's assessment adjudication of Mason is invalid, and the matter is remanded for a hearing in accordance with the provisions of the AAL.[5]

## ORDER

AND NOW, this *21st* day of *November,* 2005, the order of the Pennsylvania Department of Corrections' Chief Hearing Examiner dated January, 19, 2005, is hereby vacated, and this case is remanded to the Department of Corrections Hearing Examiner, for an evidentiary hearing, consistent with the attached opinion.

Jurisdiction is relinquished.

---

4. Because of the way we have resolved this matter, we need not address whether the hearing conducted under 71 P.S. § 310–4(a) comports with due process.

5. As we do not have a transcript as to what occurred below, we cannot conduct appropriate appellate review of the evidentiary issues that Mason raises, including whether the introduction of the bank records was impermissible hearsay or that he is entitled to non-legal assistance because he is entitled to lay assistance pursuant to DC–ADM 801VI.O.(4) as he is unable to relate simple daily occurrences as well as articulate complex legal precepts. As to his contention that the Department violated his due process right to property by denying him legal counsel and/or assistance at his assessment hearing, we have held that due process does not require the appointment of counsel to an inmate who is appealing an assessment of damages following a *Holloway*-type hearing because the interest at stake is financial which commands a lower level of due process protection than life or liberty interests. *Harris v. Department of Corrections,* 714 A.2d 492, 495 (Pa.Cmwlth.1998).